The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Erik Deane RABES, Defendant–
Appellant.

No. 07CA2176.

Colorado Court of Appeals,
Div. V.

Dec. 23, 2010.

As Modified on Denial of Rehearing
Feb. 3, 2011.

John W. Suthers, Attorney General, Corelle M. Spettigue, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge WEBB.

Defendant, Erik Deane Rabes, appeals the judgment of conviction and sentences entered on a jury verdict finding him guilty of multiple offenses involving sexual contact with a child. We vacate the sentence on one misdemeanor count, remand for resentencing, and otherwise affirm.

## I. Background

After receiving a tip from America Online that Rabes had uploaded images of child pornography for transmittal through his America Online account (the AOL images), the National Center for Missing and Exploited Children (NCMEC) forwarded the tip to Nebraska police. An investigator viewed the images and obtained a warrant. When police searched Rabes's house, they found images on his computer depicting sexual contacts between Rabes and a young girl.

Rabes's ex-wife identified the location in the images as the basement of a home in Colorado Springs, where she and Rabes had once lived. She recognized the girl in the pictures as M.V., the four-year-old child of a neighbor.

In Colorado, Rabes was charged with five counts: sexual assault on a child, sexual assault on a child by a person in a position of trust, two felony counts of sexual exploitation

of a child, and a misdemeanor count of sexual exploitation of a child. Before trial on these charges, he pled guilty to production of child pornography in a related federal case.

A jury convicted Rabes as charged. He was sentenced to concurrent ten-year prison sentences for the sexual assault counts, and a concurrent 24–month prison term for the misdemeanor sexual exploitation count. For the two felony sexual exploitation counts, he received twelve-year prison sentences consecutive both to each other and to the other counts.

## II. Suppression

Rabes first contends the trial court erred in denying his motion to suppress the items recovered in the search of his home. Specifically, he argues that the affidavit in support of the search warrant was "bare bones" because it did not include the AOL images or describe them, but only recited that the premises to be searched were believed to contain images "depict[ing] children in a sexually explicit manner, which would include visual representation or image of a person or portion of the nude human body." We discern no error.

### A. Standard of Review

■ A trial court's suppression ruling presents a mixed question of law and fact. *People v. Alameno,* 193 P.3d 830, 834 (Colo. 2008). We defer to the trial court's findings of historical fact, but we review the court's legal conclusions de novo. *Id.*

### B. Governing Law

■ To establish probable cause, an affidavit in support of a search warrant must allege "facts sufficient to cause a person of reasonable caution to believe that contraband or evidence of criminal activity is located at the place to be searched." *People v. Randolph,* 4 P.3d 477, 481 (Colo.2000) (quoting *People v. Turcotte–Schaeffer,* 843 P.2d 658, 659–60 (Colo.1993)); *see Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place). A "presumption of validity" attaches to the

affidavit submitted in support of a search warrant. *People v. Kerst,* 181 P.3d 1167, 1171 (Colo.2008).

■ However, when the affidavit is based on a tip from an informant, the reviewing magistrate must take into account the totality of the circumstances, including the informant's veracity, reliability, and basis of knowledge, and the level of independent police corroboration. *Randolph,* 4 P.3d at 481–82.

■ In reviewing to determine if a search warrant was validly issued, we ask whether facts set forth in the supporting affidavit provided the issuing magistrate with a "substantial basis" for concluding that probable cause existed. *Id.* at 481. Because the probable cause standard does not readily lend itself to "mathematical certainties," *id.* at 482, "we accord a magistrate's probable-cause determination great deference." *People v. Gutierrez,* 222 P.3d 925, 937 (Colo. 2009). But if an affidavit contains only conclusory statements devoid of facts from which a magistrate can independently determine probable cause, it is deemed a deficient "bare bones" affidavit. *People v. Pacheco,* 175 P.3d 91, 96 (Colo.2006).

Where images of child pornography are relied on to establish probable cause, courts differ on the level of specificity required to describe the images to the issuing magistrate. *See United States v. Brunette,* 256 F.3d 14, 19 (1st Cir.2001) ("Ordinarily, a magistrate judge must view an image in order to determine whether it depicts the lascivious exhibition of a child's genitals."); *United States v. Lowe,* 516 F.3d 580, 586 (7th Cir.2008) ("As a general matter, an issuing court does not need to look at the images described in an affidavit in order to determine whether there is probable cause to believe that they constitute child pornography. A detailed verbal description [of the images] is sufficient."); *United States v. Chrobak,* 289 F.3d 1043, 1045 (8th Cir.2002) (statement in affidavit that images depicted "sexually explicit conduct involving children under the age of 16" provided substantial basis for concluding that a search would uncover evidence of wrongdoing because this language "is al-

most identical to the language of 18 U.S.C. § 2252"); *United States v. Smith*, 795 F.2d 841, 848 (9th Cir.1986) (same)[1]; *but see State v. Nuss*, 279 Neb. 648, 781 N.W.2d 60, 67–68 (2010) (statement in affidavit that files and images constituted "child pornography" and that the search would yield depictions of children "in a sexually explicit manner" insufficient because it "does not use or even refer to the statutory definitions of sexually explicit conduct in describing the images").[2]

## C. Analysis

■ Initially, we decline to adopt an absolute requirement that images of child pornography must be attached to the affidavit to establish probable cause. *See People v. Slusher*, 844 P.2d 1222, 1228 (Colo.App.1992) (affidavit describing "photographs of nude young males and any other sexually explicit photographs or materials" was sufficiently particular); *Nuss*, 781 N.W.2d at 67 (while copies of images may be used to establish probable cause, they are not required).

Further, defendant's assertion that upholding the warrant despite lack of any description of the AOL images in the affidavit means "an issuing judge can simply trust the affiant's judgment that probable cause existed" ignores facts in the affidavit from which the magistrate could have concluded that the tip alleging that the AOL images constituted "child pornography" was reliable. It resulted from a mandatory reporting requirement imposed by a federal statute that requires Internet service providers to report to the NCMEC "CyberTipline" any "facts and circumstances" involving the transmission of ap-

parent child pornography. *See* 18 U.S.C. § 2258A(a)(2)(A), (b) (2010). Then the NCMEC must forward such reports to the United States Attorney General, and may forward them to state or local law enforcement "for the purpose of enforcing State criminal law." 18 U.S.C. § 2258A(c)(1)-(2).[3] *See United States v. Grant*, 434 F.Supp.2d 735, 746 (D.Neb.2006) (upholding warrant based on affidavit reflecting "apparently unbiased computer repairman's claim to have seen 'child pornography' on a computer" he had serviced).

■ The affidavit also established that the investigating officer had seen the AOL images. And by examining these images, the officer corroborated the tip using his experience. *See Turcotte–Schaeffer*, 843 P.2d at 660 (finding probable cause where informant's statements were corroborated by the police). A magistrate may determine probable cause based on "reasonable inferences" from facts set forth in the affidavit, and may "utilize his common sense." *People v. Williams*, 200 Colo. 187, 193, 613 P.2d 879, 883 (1980). That the officer concluded the images depicted child pornography was a reasonable inference based on common sense. *See United States v. Van Shutters*, 163 F.3d 331, 337–38 (6th Cir.1998) (accepting as common sense inference that affiant had observed defendant's residence), *cited with approval in People v. Gall*, 30 P.3d 145, 152 (Colo.2001).

Further, the investigating officer's conclusion that the search would yield images constituting child pornography was based on his extensive experience and training involving

---

1. *Smith* distinguished between "child protection and obscenity statutes," explaining that an affidavit merely alleging obscenity "makes a complicated and subjective conclusion unsuitable for an independent judicial evaluation." 795 F.2d at 848 n. 7.

2. *Nuss* upheld denial of a motion to suppress based on the good faith exception. Although the Attorney General also made that argument here, the interplay between the good faith and bare bones doctrines is less clear in Colorado. *See People v. Hoffman*, —— P.3d ——, 2010 WL 1491645 (Colo.App.2010) (Dailey, J., dissenting).

3. The affidavit outlined this process for the issuing magistrate: "America Online (AOL), an internet service provider, detected two emails con-

taining child pornography being uploaded to their system for transmittal. America [O]nline captured the email address and its contents and made an electronic report of the incident including images to the National Center for Missing and Exploited Children (NCMEC). America [O]nline is mandated by federal law to report incidents of online child sexual exploitation to NCMEC through the Cybertipline.... [The affiant] was notified by email of the existence of the reports, Cybertip # 289710 and 289715 by email and accessed the complaints *with images* through a secure internet connection." (Emphasis added.)

Internet crimes against children.[4] The issuing magistrate could properly have considered this factor. *People v. Eirish*, 165 P.3d 848, 854 (Colo.App.2007) (an officer's training and experience may be considered in determining probable cause); *compare Smith*, 795 F.2d at 848 ("[M]agistrate reasonably considered the statement of an experienced postal inspector that the photos depicted 'sexually explicit conduct' ...."), *with Brunette*, 256 F.3d at 18 (affiant "had less than two years[ ] experience investigating child pornography crimes").

■ Additionally, one of the statutes cited in the affidavit, Neb.Rev.Stat. § 28–1463.02, contains the phrase "sexually explicit conduct." Echoing this phrase, the affidavit expresses a belief that the premises to be searched contain images depicting "children in a sexually explicit manner." *See Chrobak*, 289 F.3d at 1045 (emphasizing statutory language in affidavit); *Smith*, 795 F.2d at 848 (same). Although *Nuss* holds otherwise, 781 N.W.2d at 65–66, we consider the better-reasoned view to be that "[t]here are very few pictures of actual children engaged in sexual acts that are not child pornography." *Chrobak*, 289 F.3d at 1045.

■ These features of the warrant show that defendant's reliance on *Brunette*, 256 F.3d at 19 ("there having been no basis for issuing the warrant other than conclusory statutory language"), is misplaced. In child pornography cases, a warrant that specifically describes the content of the images would be the better practice. But in assessing the totality of the circumstances, *People v. Miller*, 75 P.3d 1108, 1113 (Colo.2003), here we conclude the affidavit was not "bare bones." Accordingly, we discern no error by the trial court in denying defendant's motion to suppress the evidence obtained from the search.

## III. Prior Statements

Rabes next contends the trial court erred in admitting evidence of his prior statements made in the federal case. We uphold the trial court's ruling.

### A. Pertinent Facts

During its case-in-chief, the prosecution moved to introduce statements Rabes had made in pleading guilty in his federal case:

- Rabes admitted to inducing and enticing a minor (namely M.V.) to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct.
- He also admitted the existence of thirty-two photographs depicting him engaging in sexually explicit conduct with M.V.

Defense counsel objected on numerous grounds, including a general reference to due process. The court found that the statements were relevant to rebut the defense that the images did not depict actual events and allowed the prosecution to introduce Rabes's statements through a federal agent who was present at the plea hearing.

### B. CRE 410

■ Reasoning that the statements were made "in connection with" his offer to plead guilty in his federal case, Rabes now argues that the trial court violated CRE 410 and his due process rights in admitting the statements. We are not persuaded.

■ Because Rabes did not object under CRE 410 below, we review only for plain error. *People v. Vigil*, 127 P.3d 916, 929 (Colo.2006); ˙ *see People v. Rodriguez*, 209 P.3d 1151, 1156 (Colo.App.2008) (appellate review is limited to specific objections raised before trial court), *aff'd*, 238 P.3d 1283 (Colo. 2010).

---

4. The affidavit explained: "Your affiant is a criminal investigator with 20.5 years of experience in law enforcement with the Nebraska State Patrol assigned as Coordinator of the Nebraska State Patrol Computer Crimes/Internet Crimes Against Children Unit.... [Y]our affiant is a consultant ... teaching on-line investigative techniques nationwide to investigators from over twenty five states as well as United States Customs Service, United States Secret Service and the Federal Bureau of Investigation. Your affiant has taught classes at the National Internet Crimes Against Children Training Conference.... [Y]our affiant is board Chairman of the National Internet Crimes Against Children Task Force, sponsored by the United States Department of Justice, Office of Juvenile Justice and Delinquency Programs."

CRE 410 limits evidence related to the plea bargaining process:

> [E]vidence of a plea of guilty, later withdrawn, or a plea of *nolo contendere,* or of an offer to plead guilty or *nolo contendere* to the crime charged or any other crime, or of statements made in any connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal action, case, or proceeding against the person who made the plea or offer.

The phrase "statements made in any connection with" refers to, as pertinent here: (1) actual offers to plead guilty, or (2) statements made during plea negotiations with prosecutors. *People v. Garcia,* 169 P.3d 223, 225 (Colo.App.2007). Because the statements at issue here do not fall into either of these categories, Rule 410 is inapplicable.

### C. Right of Allocution

Rabes also argues that his right to plea allocution in his federal case was "rendered meaningless" by the use of his incriminatory statements in this case. He cites no supporting authority, nor have we found any in Colorado. And the statements at issue appear to have been made in accepting the plea, not in allocution for purposes of sentencing. *People v. Martinez,* 83 P.3d 1174, 1181 (Colo.App.2003) (the right of allocution is a statutory right under section 16–11–102(5), C.R.S.2010, that applies during sentencing, not a constitutional right).

Further, because Rabes does not dispute that he voluntarily and understandingly pled guilty in his federal case, we are unpersuaded. *See People v. Alexander,* 797 P.2d 1250, 1256 (Colo.1990) (guilty plea must be entered voluntarily and understandingly). By pleading guilty, a defendant waives certain rights, including the right against self-incrimination. *People v. Schneider,* 25 P.3d 755, 759 (Colo.2001). A guilty plea is "more than a confession which admits that the accused did various acts"; it is "a stipulation that no proof by the prosecution need b[e] advanced." *Boykin v. Alabama,* 395 U.S. 238, 242 & n. 4, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (quoting in part *Woodard v. State,* 42 Ala.App. 552, 171 So.2d 462, 469 (1965)). And in imposing sentence, a court may consider what is said by a defendant who chooses to speak. *People v. Villarreal,* 131 P.3d 1119, 1129 (Colo.App.2005).

### IV. Challenges for Cause

Rabes next contends the trial court erroneously refused to excuse two potential jurors for cause. We reject this contention.

A trial court's ruling on a challenge for cause is reviewed for an abuse of discretion. *People v. Young,* 16 P.3d 821, 824 (Colo.2001). Because the trial court is in a better position to assess the sincerity and credibility of statements made during voir dire, our review is highly deferential. *Carrillo v. People,* 974 P.2d 478, 485–86 (Colo. 1999) (abuse of discretion standard is a "very high standard of review," and appellate courts should not second-guess the trial court's judgment based on a cold record).

Here, Rabes challenges the court's ruling based on the following colloquy between defense counsel and the two jurors:

> [Defense Counsel]: Let's say, let's pretend during this trial you see a picture of what looks like child pornography, but you don't know if it's real or if it's fake, but you feel so much disgust by looking at the image. Do you think there's a danger that you might overlook the judge's rule about whose job it is to do the proving in this case and you might say it's close, but I'm going to find him guilty because I don't like the picture?
>
> . . . .
>
> [Juror H]: I think it would be hard for me to separate those things, but I would like to think that I'd be able to do that.
>
> . . . .
>
> [Defense Counsel]: Is there a danger with you that based upon what's in the photograph you might find somebody guilty even if there's not proof that it's a real photograph.
>
> [Juror H]: Yes.
>
> . . . .
>
> [Juror M]: I feel the same. If you can't tell me if it's ... a fake or doctored picture, I'm under the assumption it's an ac-

tual picture. I'm not going to like what I see.

[Defense Counsel]: Even if the rules say the Prosecution has to prove to you that it's real, Mr. Rabes does not have to prove to you that it's fake?

[Juror M]: If you're not going to tell me it's a fake picture to defend your client, I'm going to assume it's a real picture and I'm going to feel the same way.

[Defense Counsel]: One of the rules the judge will tell you about is that Mr. Rabes does not have to testify in his own trial. Now most people I know say, boy, I like to hear both sides of the story. Some people might be thinking if I don't hear from Mr. Rabes, then he's probably got something to hide.... [Juror M], tell me your thoughts on that. If he didn't testify, would you think he had something to hide?

[Juror M]: I understand that the defendant doesn't have to testify on his own behalf. I can't hold him accountable whether he testifies or not. No, I wouldn't feel he's guilty because he doesn't testify.

[Defense Counsel]: Those same rules also say that he does not have to prove his innocence. He doesn't have to put an expert on to say the picture is fake. The rules say the Prosecution has to prove to you the picture is real. Not everyone is comfortable with that rule. I simply need to know whether you can follow that rule; and it sounds to me, [Juror M], you're not comfortable and maybe you're not a good person for this type of trial.

[Juror M]: If the Prosecution is going to present evidence, I'm assuming it's actual evidence. If you're not going to try and prove that it's not real, I'm still going to assume that it's actual evidence. I have to take that into consideration. I figure if— in all actuality, if it's not real, you're going to do whatever you can to debunk their evidence. If you don't, I'm assuming that's actual evidence. I will take that into consideration in my decision.

Contrary to defendant's assertion, we see nothing in these jurors' statements that would lead us to believe either of them would be unable to follow the court's instructions on the burden of proof. Although Juror H con-

ceded a danger that he would convict based on his reaction to explicit photos, he affirmatively stated that he "would like to think" he was capable of separating his distaste from his duty as a juror. And Juror M's statements were the equivalent of saying that, unless the authenticity of the images was placed in issue, he would not assume that the evidence presented by the People was fake. This statement does not indicate a misunderstanding of the burden of proof.

Accordingly, we conclude that the trial court did not abuse its discretion in denying defendant's challenges for cause to these two jurors. *See People v. Merrow*, 181 P.3d 319, 321 (Colo.App.2007) ("If a potential juror's statements do not evince the sort of enmity or bias that warrants dismissal under § 16–10–103(1)(j), C.R.S.2006, a trial court may deny a challenge for cause without further inquiry.").

## V. Felony Sentencing

Reasoning that his convictions all rested on identical evidence, defendant contends the trial court erroneously imposed consecutive sentences for his two felony sexual exploitation of a child convictions. We uphold the sentences.

When a defendant is found guilty of two or more offenses based on the same act or series of acts arising from the same criminal episode and the evidence supporting the counts is identical, the sentences imposed must run concurrently. § 18–1–408(3), C.R.S. 2010; *Juhl v. People*, 172 P.3d 896, 899 (Colo. 2007). Whether the evidence supporting the offenses is identical depends on whether the charges result from the same act, or from two or more acts fairly considered to be separate. *Juhl*, 172 P.3d at 902. We must affirm a trial court's decision to impose consecutive sentences if any evidence in the record supports the trial court's finding that separate acts support each of the convictions. *People v. Bass*, 155 P.3d 547, 554 (Colo.App. 2006) (standard of review is abuse of discretion).

Colorado's sexual exploitation statute contemplates that each sexually exploitative image of a child constitutes a discrete act of victimization of the child. *People v. Renander*, 151 P.3d 657, 662 (Colo.App.2006)

(citing *United States v. Esch*, 832 F.2d 531, 541–42 (10th Cir.1987) (dismissing argument that all photographs taken during a single photographic session were part of a single criminal episode)).

 Here, because the prosecution presented multiple and distinct images of M.V. and Rabes involved in sexually explicit conduct, we conclude that the trial court did not err in running defendant's sentences for felony sexual exploitation of a child consecutive to one another. And because sexual assault on a child is based not on a sexually exploitative image but on evidence of a sexual contact, we further conclude that it was appropriate for the trial court to run the felony sexual exploitation sentences consecutive to Rabes's other sentences. *See Juhl*, 172 P.3d at 902 ("[W]hether the evidence supporting the offenses is identical turns on whether the charges result from the same act. . . .").

## VI. Misdemeanor Sentencing

Defendant was sentenced to 24 months for his misdemeanor sexual exploitation of a child conviction. But at the time of defendant's conviction, this was a class one misdemeanor, punishable by a maximum of eighteen months. *See* Ch. 359, sec. 1, § 18–6–403(5), 2006 Colo. Sess. Laws 2043. Hence, we agree with the parties that the sentence for defendant's misdemeanor sexual exploitation conviction must be vacated, and the case must be remanded for resentencing on that count alone.

In all other respects, the judgment and sentences are affirmed.

Judge RUSSEL and Judge GABRIEL concur.