Opinion by JUDGE BERGER
¶ 1 Based on a plea agreement in which many other serious charges were dismissed, defendant, Randy Scott Phipps, pleaded guilty to sexual assault on a child. He was sentenced to an indeterminate prison term of seventeen years to life. Phipps then sought postconviction relief under Crim. P. 35(c), claiming ineffective assistance of counsel. The district court denied his motion without holding a hearing.[1]
¶ 2 Phipps asserts on appeal that the district court (1) was required to hold a hearing on his motion and (2) erred in rejecting his ineffective assistance of counsel claims. We affirm the district court's order because Phipps' allegations were bare and conclusory in nature, directly refuted by the record, and, even if proven true, would have failed to establish one of the prongs of the test prescribed in Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
I. Relevant Facts and Procedural History
¶ 3 During an investigation to detect child pornography shared over the Internet, the police remotely searched a computer onto which at least two files depicting child pornography had been downloaded. Using that computer's Internet Protocol (IP) address, the police determined that the computer was located in Phipps' home. The police obtained and executed a search warrant of Phipps' home.
¶ 4 Phipps was not home at the time of the search, but an officer spoke with him on the phone during the search and explained why his home was being searched. During that recorded phone call, Phipps admitted that he stored child pornography on his computer and that once the officer searched his computer, "his life was over." The police seized Phipps' computer, on which they found over thirty videos of children engaged in sexual acts.
¶ 5 One of these videos depicted Phipps' stepdaughter when she was approximately eight or nine years old. She was mostly nude, and the video showed Phipps instructing her to use sex toys as well as Phipps using sex toys on her. In her police interview, Phipps' stepdaughter identified herself and Phipps in the video and stated that Phipps had sexually assaulted her numerous times.
¶ 6 Phipps was charged with sexual assault on a child (position of trust-pattern of abuse) under sections 18-3-405.3(1), (2)(b), C.R.S. 2016; aggravated incest under section 18-6-302(1)(a), C.R.S. 2016; sexual exploitation of a child (inducement) under section 18-6-403(3)(a), C.R.S. 2016; and sexual exploitation of children (possession) under section 18-6-403(3)(b.5). The court found Phipps indigent and appointed counsel to represent him.
¶ 7 A plea agreement was negotiated and Phipps pleaded guilty to the sexual assault charge. In exchange, the district attorney dismissed the remaining charges and promised that the United States Attorney would not prosecute Phipps on child pornography charges.[2]
*1161 ¶ 8 At the sentencing hearing, Phipps took full responsibility for his crimes. He stated that he did not wish to put his family through a "horrific ordeal with a jury trial," and that his "remorse, regrets, shame, despair, sadness, and sorrow cannot be measured."
¶ 9 In his motion for postconviction relief, Phipps made numerous claims of ineffective assistance of counsel. The arguments Phipps renews on appeal are:
• His counsel failed to challenge the legality of the initial, remote search of Phipps' computer, which violated his Fourth Amendment rights.
• His counsel's decision to waive the preliminary hearing constituted deficient performance.
• His counsel's failure to request a bond reduction constituted deficient performance.
• His counsel's failure to investigate and challenge the prosecution's forensic computer evidence or hire an expert to do so constituted deficient performance.
• His counsel failed to advise him that, as a condition of his parole eligibility, he might be required to reveal past crimes, exposing him to additional criminal charges.
• His counsel failed to advise him that evidence of his crimes might be destroyed after he pleaded guilty.
• His counsel failed to advise him that he might be ordered to pay restitution to his stepdaughter.
• His counsel misadvised him about the minimum amount of prison time he would have to serve before being eligible for parole.
• His counsel misled him with regard to whether he was pleading guilty to a crime of violence.
The district court did not hold a hearing, but concluded that the existing record demonstrated that Phipps' claims failed one or both prongs of Strickland .
II. Unaddressed Arguments
¶ 10 In this court, Phipps repeatedly purports to incorporate arguments made in his Crim. P. 35(c) motion.
¶ 11 Phipps' attempt to incorporate the arguments he made in the district court violates C.A.R. 28(a)(7)(B), which requires appellants to state their "contentions and reasoning, with citations to the authorities and parts of the record on which the appellant relies." "Incorporating by reference or adopting by reference arguments from previous filings is improper because it attempts to shift, from the litigant to the court, the task of locating and synthesizing the relevant facts and arguments." People v. Duran , 2015 COA 141, ¶ 20, 382 P.3d 1237. Such incorporations by reference also circumvent C.A.R. 28(g), which limits the length of briefs. See Castillo v. Koppes-Conway , 148 P.3d 289, 291 (Colo. App. 2006).
¶ 12 Phipps' failure to specifically reassert those arguments in this court constitutes a waiver of those claims. People v. Rodriguez , 914 P.2d 230, 249 (Colo. 1996). Accordingly, we do not address any of the "incorporated by reference" arguments.
III. Ineffective Assistance of Counsel
¶ 13 Phipps argues that if not for the constitutionally deficient conduct of his counsel he would not have pleaded guilty to sexual assault on a child, and he contends that the district court erred in concluding otherwise without holding a hearing.
¶ 14 The United States and Colorado Constitutions guarantee a criminal defendant's right to receive reasonably effective assistance of counsel. U.S. Const. amends. VI, XIV ; Colo. Const. art. II, § 16 ; Strickland , 466 U.S. at 685-86, 104 S.Ct. 2052 ; People v. Norman , 703 P.2d 1261, 1272 (Colo. 1985). To prevail on an ineffective assistance of counsel claim, the defendant must establish that (1) counsel's performance was constitutionally deficient and (2) the deficient performance resulted in prejudice to the defendant. Strickland , 466 U.S. at 687, 104 S.Ct. 2052 ; Ardolino v. People , 69 P.3d 73, 76 (Colo. 2003).
¶ 15 To satisfy the prejudice prong in the context of a guilty plea, the defendant must show that there is a reasonable probability that "but for counsel's errors, he would not have pleaded guilty and would have insisted *1162 on going to trial." People v. Stovall , 2012 COA 7, ¶ 19, 284 P.3d 151 (citation omitted).
¶ 16 In determining whether counsel's performance was deficient, we evaluate the representation from counsel's perspective at the time of the representation, and we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Ardolino , 69 P.3d at 76.
¶ 17 To prove deficient performance, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. Davis v. People , 871 P.2d 769, 772 (Colo. 1994) (citing Strickland , 466 U.S. at 689, 104 S.Ct. 2052 ); People v. Lopez , 2015 COA 45, ¶ 59, 399 P.3d 129. With regard to trial strategy, defense counsel has final authority to make strategic or tactical decisions, including "what strategy should be employed in the defense of the case." Arko v. People , 183 P.3d 555, 558 (Colo. 2008) (quoting Steward v. People , 179 Colo. 31, 34, 498 P.2d 933, 934 (1972) ).
¶ 18 A district court may deny a postconviction motion without a hearing for a number of reasons. Bare and conclusory allegations are insufficient to entitle a defendant to an evidentiary hearing on his postconviction motion. People v. Venzor , 121 P.3d 260, 262 (Colo. App. 2005) (citing Moore v. People , 174 Colo. 570, 572, 485 P.2d 114, 115 (1971) ); see also Duran , ¶ 9.
¶ 19 Denial of the motion without a hearing may also be justified if the record directly refutes the defendant's claims or if the motion, files, and existing record clearly establish that the defendant's allegations, even if proven true, would fail to satisfy one or the other prong of Strickland . Ardolino , 69 P.3d at 77 ; see also Duran , ¶ 9.
¶ 20 We review the denial of a Crim. P. 35(c) motion without a hearing de novo. People v. Gardner , 250 P.3d 1262, 1266 (Colo. App. 2010).
A. Fourth Amendment Challenge to the Remote Search of Phipps' Computer
¶ 21 We first address Phipps' argument that his counsel provided deficient representation when he failed to challenge the legality of the initial, remote search of his computer. The district court rejected this claim, concluding that there was no arguable basis to make such a challenge and that the challenge inevitably would have failed.
¶ 22 The police initially discovered child pornography on Phipps' computer by using LimeWire, which is a "peer-to-peer file sharing application that connects users who wish to share data files with one another." United States v. Stults , 575 F.3d 834, 842 (8th Cir. 2009) (quoting United States v. Lewis , 554 F.3d 208, 211 (1st Cir. 2009) ).[3]
¶ 23 The Eighth Circuit described the operation of LimeWire software as follows:
When a user wants to download files from other users, he launches LimeWire and inputs a search term or terms. The application then seeks matches for those terms in the file names and descriptions of all files designated for sharing on all computers then running the LimeWire application.... LimeWire will then display a list of file names that match the search terms, and the user can select one or more of those to begin downloading the files.
Id. (citations and alteration omitted).
¶ 24 When the police conducted the initial Internet search of computers to uncover child pornography, they did not have a warrant to search any particular computer. Phipps contends that the initial discovery of child pornography files on his computer constituted a warrantless search that violated the Fourth Amendment.
¶ 25 A search violates the Fourth Amendment only when the defendant has a "legitimate expectation of privacy in the areas searched or the items seized." People v. Curtis , 959 P.2d 434, 437 (Colo. 1998) (citation omitted). No Colorado appellate court has addressed whether a person has a legitimate *1163 expectation of privacy in computer files accessed through peer-to-peer sharing software such as LimeWire. However, federal and other state courts have uniformly held that a person who installs and uses file sharing software does not have a reasonable expectation of privacy in those files.
¶ 26 The leading case is United States v. Ganoe , 538 F.3d 1117, 1127 (9th Cir. 2008). There, the court held that while, generally, an individual has a reasonable expectation of privacy in his or her personal computer, that expectation does not survive the installation and use of file sharing software, such as LimeWire, at least with respect to the files made available through the file sharing software. Id. ; see also United States v. Borowy , 595 F.3d 1045 (9th Cir. 2010).
¶ 27 In Stults , 575 F.3d at 843, the Eighth Circuit similarly held that the defendant did not have a "reasonable expectation of privacy in files that the FBI retrieved from his personal computer where [the defendant] admittedly installed and used LimeWire to make his files accessible to others for file sharing." The court analogized the defendant's actions to giving his house keys to all of his friends, and concluded that he "should not be surprised should some of them open the door without knocking." Id.
¶ 28 Other federal and state courts have reached the same result. See United States v. Conner , 521 Fed.Appx. 493, 498 (6th Cir. 2013) (computer user had no reasonable expectation of privacy in the contents of files that had been downloaded to a publicly accessible folder through file sharing software); United States v. Perrine , 518 F.3d 1196, 1205 (10th Cir. 2008) (same); State v. Welch , 236 Ariz. 308, 340 P.3d 387, 391 (Ariz. Ct. App. 2014) (same); State v. Aston , 125 So.3d 1148, 1154 (La. Ct. App. 2013) (same); State v. Peppin , 186 Wash.App. 901, 347 P.3d 906, 911 (2015) (same). Indeed, we have found no reported case that has held that a computer owner has a reasonable expectation of privacy in files that he or she makes available through software such as LimeWire.
¶ 29 Phipps argues that he nevertheless retained a reasonable expectation of privacy in his computer files because he was not aware that the files stored on his computer were publicly accessible through LimeWire, and that, therefore, he did not "knowingly or intelligently allow[ ] private files and information on his PC to be broadcast out to the network and web." The Ninth Circuit Court of Appeals rejected a similar argument in Borowy . In that case, the defendant had installed a feature which allowed him to prevent others from downloading or viewing his files, but that feature was not engaged when the police located the files. Borowy , 595 F.3d at 1047. The court concluded that because the files were "still entirely exposed to public view," the defendant's "subjective intention not to share his files did not create an objectively reasonable expectation of privacy in the face of such widespread public access." Id. at 1048. We agree with this analysis.
¶ 30 Consistent with these cases, we hold that Phipps did not have a reasonable expectation of privacy in the files that he made available for public viewing through LimeWire. Because Phipps did not have a reasonable expectation of privacy in those files, his counsel's failure to challenge the search on Fourth Amendment grounds, even if deficient, could not have constituted Strickland prejudice.
¶ 31 It is unclear whether Phipps argues that because the initial, remote search of the computer was unlawful, so was the search warrant that was based on the initial search. Because the initial electronic search of the computer was lawful and the police discovered unlawful child pornography in that search, the resulting issuance of the search warrant was clearly lawful. People v. Rabes , 258 P.3d 937, 941 (Colo. App. 2010) (images of child pornography may be used to establish probable cause for a search warrant).
¶ 32 To the extent that Phipps argues that he had not installed peer-to-peer file sharing software on his computer and that the software was planted by the police, that argument is directly refuted by the record. According to the presentence report, Phipps told the police that he used LimeWire (or its sister program, FrostWire) to download child pornography. Furthermore, the district court correctly concluded, based on the entirety of the record, that "there is no reasonable basis for believing that the government has planted, destroyed, or lost computer evidence."
*1164 B. Waiver of Preliminary Hearing and Failure to Request Bond Reduction
¶ 33 Phipps next argues that his counsel was ineffective when he waived the preliminary hearing, thereby denying Phipps the opportunity to challenge the sufficiency of the state's evidence at an early stage in the proceedings, and failed to request a bond reduction.
¶ 34 A preliminary hearing is "designed to provide a judicial determination that probable cause exists[.]" People v. Frazier , 895 P.2d 1077, 1079 (Colo. App. 1994). The decision to forego a preliminary hearing is a matter of strategy. People v. Moody , 630 P.2d 74, 77 (Colo. 1981). "Mere disagreement as to trial strategy does not equate with ineffective assistance of counsel." Id. (quoting People v. McCormick , 181 Colo. 162, 167, 508 P.2d 1270, 1273 (1973) ).
¶ 35 The evidence of Phipps' guilt was overwhelming. The police recovered numerous items of physical evidence, including the video of Phipps sexually assaulting his stepdaughter. Phipps also made numerous inculpatory statements to the police both before and after his arrest. On this record, the waiver of the preliminary hearing could not have conceivably constituted ineffective assistance of counsel.
¶ 36 Phipps does not articulate how his counsel's failure to request a bond reduction constituted ineffective assistance or impacted his decision to plead guilty; instead, he makes only a bare assertion of error. Because bare and conclusory allegations regarding counsel's allegedly deficient performance are insufficient to demonstrate that a defendant may be entitled to postconviction relief, we decline to further address this argument. Duran , ¶ 9.
C. Failure to Investigate
¶ 37 Phipps argues that his counsel failed to investigate whether he had ever shared pornographic material, which he denied that he had ever done. He also argues that he believed that the police investigation of his computer was "botched," and therefore his counsel erred in refusing to request a report of the forensic investigation or to hire an expert to determine if the police investigation had been properly conducted.
¶ 38 Sharing of pornography was not an element of sexual assault on a child-the only charge to which Phipps pleaded guilty-or of any of the other charges that were dismissed. Indeed, the prosecution stated during the sentencing hearing that it did not believe that Phipps had shared the video of his stepdaughter, and the court stated: "I happen to believe that it is true that you did not send [the video] on to the [I]nternet, I don't think that you did." Thus, whether Phipps had shared pornographic material was irrelevant to his plea agreement.
¶ 39 Even if it were true that the lawful, forensic investigation of his computer was "botched," and that Phipps' counsel was deficient in failing to investigate whether the investigation had been properly conducted, that claim nevertheless failed the prejudice prong of Strickland . Phipps admitted that he possessed numerous files containing child pornography on his computer, and that he produced a video of him sexually assaulting his underage stepdaughter.
D. Deficient Advice in Connection with the Consequences of the Plea Agreement
¶ 40 Phipps contends that his counsel either misadvised or failed to advise him of the consequences of his guilty plea.
¶ 41 Because a defendant has the right to make a reasonably informed decision whether to accept a plea offer, counsel's failure to properly advise the defendant of the consequences of the plea may constitute deficient representation. Carmichael v. People , 206 P.3d 800, 806 (Colo. 2009). We address each of Phipps' allegations of deficient plea advice in turn.
1. Fifth Amendment Rights
¶ 42 Phipps argues that had he known that as a condition of his parole eligibility he might be required to reveal past crimes, exposing him to additional criminal charges, he would not have pleaded guilty. He asserts that his counsel failed to advise him of the possibility of self-incrimination, and that the parole eligibility requirement to *1165 disclose additional crimes violates his Fifth Amendment rights.
¶ 43 Phipps' contention that he was not advised of the requirement to disclose past crimes is refuted by the record. By signing the plea agreement, Phipps acknowledged that he would be required to submit to a sexual history interview, which would reasonably include past sexual crimes. Nowhere in the plea agreement does it state that Phipps would be immune from additional charges based on the revelation of additional crimes.
2. Destruction of Evidence
¶ 44 Phipps claims that his counsel failed to advise him that evidence of his crimes might be destroyed after he pleaded guilty.
¶ 45 The record refutes Phipps' argument. The certificate of counsel, signed by Phipps' counsel and attached to the signed plea agreement, states: "I have explained to the defendant and am satisfied that the defendant understands and is waiving any right to the preservation of evidence that may contain DNA, and that all evidence may be disposed of by law enforcement without further notice or court order."
¶ 46 Moreover, in view of Phipps' admissions and the overwhelming evidence of his guilt, there is no reasonable likelihood that Phipps would have changed his decision to plead guilty merely because evidence of his crimes might be destroyed. Thus, even if his counsel had failed to advise him of that possibility, Phipps' claim fails the prejudice prong of Strickland .
3. Restitution
¶ 47 Phipps argues that his counsel never advised him of the possibility that he would be ordered to pay restitution to his stepdaughter.
¶ 48 During the sentencing hearing, Phipps' counsel stated that he reviewed the requested restitution with Phipps. However, the plea agreement did not specify that Phipps might be required to pay restitution, and restitution was not discussed at the providency hearing. Thus, it is possible that Phipps was not advised of the possibility of restitution.
¶ 49 However, in both the plea agreement and at the providency hearing, Phipps was advised that he could be required to pay a fine of between $3000 and $750,000. Phipps told the court during the hearing that he understood that he might be assessed a fine in that range. The total amount of the monetary obligation imposed on Phipps, including both fines and restitution, was approximately $17,000. On this record, this claim fails Strickland 's second prong because there is no reasonable likelihood that Phipps would not have pleaded guilty had he been specifically advised of his exposure for restitution to the victim.
4. Parole Eligibility
¶ 50 Phipps argues that his counsel misadvised him about the minimum amount of prison time he would have to serve before being eligible for parole. He claims that his counsel advised him that he would be eligible for parole after serving sixty percent or less of his sentence.
¶ 51 The record directly refutes Phipps' claim. The plea agreement states: "I understand that if I am sentenced to the Department of Corrections, upon completion of the minimum period of incarceration specified in the indeterminate sentence , the State Board of Parole will hold a hearing to determine whether to release me on parole." (Emphasis added.)
¶ 52 Even if Phipps' counsel had given him advice that was different from the information in the plea agreement, he was required to seek clarification when given an opportunity to do so. People v. DiGuglielmo , 33 P.3d 1248, 1251 (Colo. App. 2001). Phipps failed to seek clarification, and he cannot now claim as a basis for postconviction relief that he was confused at the providency hearing. Id.
5. Crime of Violence
¶ 53 Phipps argues that his counsel misled him with regard to whether he was pleading guilty to a crime of violence.
¶ 54 Phipps pleaded guilty to sexual assault on a child (position of trust-pattern of abuse), a class three felony under section 18-3-405(2)(d). A class three felony is presumptively *1166 punishable by a term of four to twelve years. § 18-1.3-401(1)(a)(V)(A), C.R.S. 2016. But because Phipps' crime was punishable as if it were a crime of violence under section 18-1.3-406, C.R.S. 2016, the minimum was the mid-point of the presumptive range (eight years) and the maximum was twice the top of that range (twenty-four years). § 18-1.3-401(8)(a)(I). The court advised him of this sentencing range at the providency hearing, and Phipps also was advised of this range in the plea agreement.
¶ 55 While sexual assault on a child is not a "defined" crime of violence, because it nevertheless is treated as a crime of violence for purposes of sentencing, it constitutes a "per se" crime of violence. Chavez v. People , 2015 CO 62, ¶ 12, 359 P.3d 1040.
¶ 56 Phipps asserts that if he had been advised that the plea deal required him to plead guilty to "any crime that was associated in any way with violence or a crime of violence," he would have rejected the plea deal and insisted on going to trial.
¶ 57 Phipps' argument fails both prongs of Strickland . Regarding the deficient performance prong, at the plea hearing, Phipps' counsel advised the court that:
[A] matter of great importance to my client is that he does want the Court to know-and we will expand on this at sentencing-that violence-no use of violence or threat of violence was ever made. We realize this was a terrible crime, and we're not trying to lessen that at all. But this isn't a situation where the child was threatened, if you tell, this is going to happen to you. Nothing of that sort ever occurred.
¶ 58 At sentencing, Phipps told the trial court that "there was never any violence or threats of violence, ever" and that "[t]here was never any violence. If [my son] heard [the victim] saying please don't, in her room one time, there were times that I spanked my kids."
¶ 59 Phipps' expressed position, reasonably construed by his plea counsel, the trial court, and this court, was that he would never plead guilty to a violent crime. In common usage, a violent crime is one that includes, as an element of the offense, "the use, attempted use, threatened use or substantial risk of use of physical force against the person or property of another." Black's Law Dictionary 453 (10th ed. 2014). Phipps did not plead guilty to a violent crime in that sense, and thus the record disproves that his counsel's performance was deficient.
¶ 60 As to the prejudice prong, Phipps' own statements explaining his reasons for pleading guilty refute his argument. At sentencing, Phipps stated that:
The only right and proper choice of direction for me was to plead guilty, to take full responsibility for what I have done, what I put [the victim] through, my family-and my family through. I'm sorry. I could not put [the victim] or my family through the horrific ordeal with a jury trial.
¶ 61 In view of these statements, the record establishes that there is no reasonable probability that Phipps would have elected to proceed to trial if he had been advised that sexual assault on a child was a "per se" crime of violence. Stovall , ¶ 19.
IV. Mishandling of Motion and Transcript
¶ 62 Phipps argues that (1) the district court "redacted" his Crim. P. 35(c) motion, thus precluding proper review of his claims; and (2) the transcript of the sentencing hearing was falsified, preventing him from properly asserting errors on appeal. We reject these arguments.
¶ 63 There is no evidence in the record that the court either altered or failed to review any properly filed motion. The court appropriately refused to review a 140-page document, styled as a Crim. P. 35(c) motion, which apparently was filed by a person acting on Phipps' behalf. That person was not a lawyer and therefore the court had no obligation to review it, and, indeed, could not. § 12-5-101(1), C.R.S. 2016. The court did review and rule on the replacement Crim. P. 35(c) motion filed by Phipps.
¶ 64 There is also no evidence whatsoever on this record that the sentencing transcript was altered. Even if it was altered, Phipps does not identify what portions of the transcript were missing or how he has been prejudiced. We therefore reject this conclusory *1167 allegation of error. People v. Zuniga , 80 P.3d 965, 973 (Colo. App. 2003).
VI. Conclusion
¶ 65 The district court's order denying Phipps' motion for postconviction relief under Crim. P. 35(c) is affirmed.
JUDGE TERRY and JUDGE BOORAS concur.

The denial of a Crim. P. 35(c) motion without a hearing often is referred to as a "summary" denial of the motion. This term is a misnomer because in most cases, like this case, there is nothing "summary" about the district court's analysis or ruling.

A Colorado district attorney does not have the power to agree that the United States will not prosecute a defendant. Presumably, either Phipps' counsel or the Colorado district attorney negotiated an agreement not to prosecute with the United States Attorney, although that agreement is not contained in the record.

On petition for rehearing, Phipps argues that FrostWire, not LimeWire, was installed on his computer. FrostWire and LimeWire are sister programs, both of which permit users to share files on the internet. United States v. Robinson , 714 F.3d 466, 468 (7th Cir. 2013). For our purposes, whether Phipps had installed FrostWire or LimeWire on his computer makes no difference.