23CA0747 Peo v McMillian 12-12-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0747
City and County of Broomfield District Court No. 18CR116
Honorable Sharon Holbrook, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Donald Lee McMillian,

Defendant-Appellant.

ORDER AFFIRMED

Division I
Opinion by JUDGE LIPINSKY
J. Jones and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 12, 2024

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Robert P. Borquez, Alternate Defense Counsel, Denver, Colorado, for
Defendant-Appellant

¶ 1    Donald Lee McMillian appeals the postconviction court's order denying his Crim. P. 35(c) claims without an evidentiary hearing. We affirm.

## I.    Background

### A.    The Charges, the Plea Agreement, and the Sentence

¶ 2    A man attacked the victim, a seventy-eight-year-old woman, in a public park.  He threatened her with a knife, stabbed her, and attempted to sexually assault her.  The man ran off after a bystander yelled at him.  Minutes after the incident, police officers detained McMillian, and less than an hour later, the bystander identified him as the attacker.

¶ 3    The prosecution charged McMillian with two counts of first degree kidnapping, three counts of sexual assault of an at-risk person, one count of first degree assault, and one count of menacing.

¶ 4    McMillian asked his counsel "to seek out an agreement that we could make with the district attorney."  Defense counsel did so. McMillian and the prosecution entered into a plea agreement under which McMillian pleaded guilty to three added counts — first degree assault on an at-risk person with serious bodily injury and use of a

deadly weapon, second degree kidnapping by seizing the victim with a real or simulated weapon, and attempted sexual assault by overcoming the victim's will. He stipulated to a fifty-two-year prison sentence, and the prosecution consented to dismiss the original counts.

¶ 5     At the providency hearing, the court confirmed that McMillian and his counsel understood and agreed to the plea. McMillian affirmed that he had read the Crim. P. 11 advisement, he had been given enough time to discuss it with his attorney, and his attorney had answered his questions. In addition, McMillian confirmed that he understood the potential penalties if he were convicted on the original charges and the sentence to which he was stipulating. The providency court accepted McMillian's pleas, finding that they were knowingly, voluntarily, and intelligently given.

¶ 6     At the sentencing hearing, defense counsel informed the court that McMillian understood he would be required to serve seventy-five percent of his sentence before he would be eligible for parole, meaning that, "given [McMillian's] age and general health and the health of people in the Department of Corrections, it would most likely be a life sentence." McMillian acknowledged that he

would die in prison, saying, "I don't think I have 52 years in me." In addition, defense counsel requested that the court defer its decision on whether McMillian should be designated a sexually violent predator (SVP) to allow counsel time to investigate McMillian's intellectual functioning. The court granted defense counsel fourteen days to file a motion on the SVP designation.

¶ 7    The court sentenced McMillian to fifty-two years in the custody of the Department of Corrections, as stipulated. In concluding that the sentence was appropriate, the court cited the crime's violent nature and McMillian's lack of credibility in claiming he had "blacked out" from alcohol use at the time of the offense.

¶ 8    At the later SVP designation hearing, McMillian's counsel argued that McMillian had developmental disabilities that affected his "cognizant abilities" and, therefore, he could not be deemed an SVP. The court found that the evidence did not establish that McMillian was developmentally disabled, and it designated him an SVP.

B.    The Postconviction Proceedings

¶ 9    McMillian filed a pro se motion for postconviction relief under Crim. P. 35(c), asserting that he would not have pleaded guilty if he

3

had known he would have to "do that much time." The court appointed counsel, who filed Crim. P. 35(c) petitions challenging the constitutionality of McMillian's guilty plea and his competency.

¶ 10    McMillian's counsel argued that McMillian had cognitive and intellectual delays and struggled with reading; he had not voluntarily made the guilty plea because he had not fully understood the potential penalties, the constitutional rights he was waiving, and the elements of the original charges; and he was incompetent at the time he pleaded guilty. In addition, McMillian's counsel asserted that plea counsel was ineffective.

¶ 11    The postconviction court denied McMillian's Crim. P. 35(c) motion and his counsel's petitions without a hearing. The postconviction court determined that

- The record belied McMillian's assertion that, "due to his low intellectual functioning, he could not adequately consult with counsel and assist in his defense."

- McMillian fully understood the guilty plea at the time.

- McMillian's claims — that his low intellectual functioning prevented him from understanding the advisements of the rights he was waiving by pleading guilty, he did not

4

understand the elements of the crimes to which he pleaded guilty, and he did not have a rational and factual understanding of the criminal proceedings — "largely duplicat[ed]" his previous claims that he could neither assist in his defense nor understand the plea agreement, and he did not overcome the facts in the record.

- McMillian failed to establish that his plea counsel provided ineffective assistance.

## II.    Analysis

### A.    Standard of Review

¶ 12    "We review de novo a district court's decision to deny a Crim. P. 35(c) motion without a hearing." *People v. Higgins*, 2017 COA 57, ¶ 11, 413 P.3d 298, 300. However, there is a tension "between de novo review and the supreme court rule authorizing postconviction courts to make some findings of fact without a hearing in deciding Crim. P. 35(c) motions." *People v. McGlaughlin*, 2018 COA 114, ¶ 26, 428 P.3d 691, 697. "To give effect to the supreme court's default rule, deference to a postconviction court's factual finding by application of the clearly erroneous standard is warranted *only* when the factfinding was made using accepted procedures *and*

5

when the record clearly establishes the fact." *Id.* at ¶ 27, 428 P.3d at 697.

## B. The Validity of McMillian's Guilty Plea

### 1. Controlling Law

¶ 13 A postconviction court may deny a Crim. P. 35(c) motion without a hearing "if the motion, files, and record clearly establish that the defendant is not entitled to relief; if the allegations, even if true, don't provide a basis for relief; or if the claims are bare and conclusory in nature and lack supporting factual allegations." *People v. Delgado*, 2019 COA 55, ¶ 8, 442 P.3d 1021, 1024. "A defendant need not set forth the evidentiary support for his allegations in his initial Crim. P. 35 motion; instead, a defendant need only assert facts that if true would provide a basis for relief under Crim. P. 35." *White v. Denver Dist. Ct.*, 766 P.2d 632, 635 (Colo. 1988).

¶ 14 In addition, in determining whether a defendant was mentally competent to enter into a plea agreement, the court must "distinguish between mental capacity, for purposes of assessing a defendant's competency to enter a guilty plea, and mental state, for

purposes of assessing the knowing and voluntary nature of the plea." *People v. Venzor*, 121 P.3d 260, 262 (Colo. App. 2005).

> The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings. The purpose of the "knowing and voluntary" inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced.

*Id.* (quoting *Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993)).

¶ 15    A guilty plea is invalid if the defendant was mentally incompetent at the time of the plea. *Von Pickrell v. People*, 431 P.2d 1003, 1005 (Colo. 1967). "[T]he law presumes that a defendant is competent; thus, the burden to prove incompetency rests with the accused." *People v. Karpierz*, 165 P.3d 753, 758 (Colo. App. 2006).

## 2.    Additional Facts

¶ 16    Following the providency hearing, Terry L. Taylor, a Sex Offense Management Board Full Operating Level Evaluator, conducted a presentence psychosexual evaluation of McMillian. Taylor found that McMillian's vocabulary and verbal abstract reasoning were in the "Extremely Low" range and that his "abstract reasoning was significantly higher than his vocabulary, which could

7

indicate a learning disorder, lack of motivation, environmental deprivation, or other factors that could impede his learning or remembering." Taylor found that McMillian was cognitively, emotionally, and socially underdeveloped, and that he "endorsed items consistent with Antisocial, Schizoid, and Obsessive Compulsive personality features." She concluded, however, that he met the criteria for an SVP.

¶ 17 After McMillian and his postconviction counsel filed the Crim. P. 35(c) motion and petitions, counsel engaged Valerie Sims, Psy.D., and Kendra Sherwood, Ph.D., to conduct a full neuropsychological evaluation of McMillian. Drs. Sims and Sherwood opined that McMillian's intellectual functioning was in the low average range, and that his reading and writing abilities were in the extremely low range. Drs. Sims and Sherwood said he had impaired central auditory processing, which would affect his ability to process one idea when another is presented. They "highly recommended that [McMillian] be asked to explain concepts back to the reader to ensure accurate comprehension."

¶ 18 Drs. Sims and Sherwood concluded that, because of McMillian's low reading level, he likely would not comprehend

complex legal materials, such as legal documents, and may inaccurately suggest that he understands what he has read. Further, they said that he may struggle to comprehend complex materials even if they are read aloud to him.

### 3. McMillian's Mental Competency

¶ 19 McMillian contends on appeal that the postconviction court erred by finding that he was competent at the time he pleaded guilty because his low intellectual functioning affected his ability to understand the terms of the plea agreement. McMillian's counsel asserted that Drs. Sims and Sherwood's evaluation "brought to light significant concerns about [McMillian's] *intellectual functioning*." (Emphasis added.)

¶ 20 As noted above, Taylor found no indication that McMillian was developmentally disabled or mentally incompetent. Similarly, Drs. Sims and Sherwood did not opine that McMillian was incompetent. Rather, they concluded that McMillian "presented with two learning disorders, including significant deficits in his abilities to read and write." Those learning disorders did not establish that McMillian was mentally incompetent and, therefore, did not establish that he

lacked the ability to understand the proceedings at the providency hearing. *See Venzor*, 121 P.3d at 262.

¶ 21     In sum, the court did not err because McMillian's allegations, even if true, did not provide a basis for relief.

### 4.    McMillian's Ability to Voluntarily, Knowingly, and Intelligently Enter into the Guilty Plea

¶ 22     McMillian contends that the postconviction court erred by concluding, without a hearing, that he made his guilty plea knowingly, intelligently, and voluntarily because of "factual issues over the extent of his low intellectual functioning." Further, McMillian argues that the court's findings were unreliable because they "were made without the witnesses' assertions being subject to the crucible of cross[-]examination."

¶ 23     The postconviction court considered the reports that McMillian's counsel submitted in determining that McMillian's low intellectual functioning did not prevent him from knowingly, voluntarily, and intelligently negotiating and entering into a plea "that was favorable to him and limited his liability at trial." The court noted that it had "a comprehensive review of [McMillian's] history, status, health[,] and mental condition," as well as

information regarding McMillian's "social information, his education and past employment, his substance abuse history, and both his physical and psychological condition." After considering Drs. Sims and Sherwood's opinions, the court concluded that the facts in the record clearly established that McMillian's low intellectual functioning did not support his argument that his plea agreement should be set aside.

¶ 24     McMillian asserts that the postconviction court's findings are unreliable because the court did not grant McMillian's lawyer the opportunity to cross-examine the witnesses. The test for determining whether, without a hearing, the postconviction court erred by determining that a defendant knowingly, intelligently, and voluntarily entered into a guilty plea requires us to consider whether "the motion, files, and record clearly establish[ed] that the defendant [was] not entitled to relief; . . . the allegations, even if true, d[id] [not] provide a basis for relief; or . . . the claims [were] bare and conclusory in nature and lack[ed] supporting factual allegations." *Delgado*, ¶ 8, 442 P.3d at 1024. The postconviction court acknowledged that McMillian had low intellectual functioning but nonetheless determined that the record clearly established that

McMillian's level of intellectual functioning did not impact his mental capacity or his ability to knowingly, intelligently, and voluntarily enter into the plea agreement.

¶ 25 The only words that McMillian spoke during the providency hearing to confirm that he understood the plea agreement were "Yes," "No," and "Guilty." However, there is no evidence that anyone influenced McMillian's answers to the court's questions at the providency hearing. More significantly, the providency court asked McMillian open-ended questions and gave him the opportunity to speak up if he did not understand the information provided to him about the plea agreement. The fact that the providency court did not ask McMillian to repeat every term of the guilty plea to confirm he understood it does not mean that McMillian did not comprehend the terms of the plea agreement. Because McMillian's statements at the sentencing hearing, noted above, demonstrated his understanding of the length of the stipulated sentence, we disagree with McMillian that the brevity of his responses to the providency court's questions is a sufficient basis for invalidating his guilty plea.

¶ 26    Thus, the postconviction court did not err by denying McMillian a hearing on his challenge to his guilty plea.

### C.    The Effectiveness of Plea Counsel

#### 1.    Controlling Law

¶ 27    A postconviction court may deny, without an evidentiary hearing, a Crim. P. 35(c) claim that counsel was ineffective "if the record directly refutes the defendant's claims or if the motion, files, and existing record clearly establish that the defendant's allegations, even if proven true, would fail to satisfy one or the other prong" of *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Phipps*, 2016 COA 190M, ¶ 19, 411 P.3d 1157, 1162. "Bare and conclusory allegations are insufficient to entitle a defendant to an evidentiary hearing on his postconviction motion." *Id.* at ¶ 18, 411 P.3d at 1162.

¶ 28    "A defendant's right in a criminal proceeding to receive the reasonably effective assistance of an attorney acting as his diligent and conscientious advocate is guaranteed by the United States and Colorado Constitutions." *Davis v. People*, 871 P.2d 769, 772 (Colo. 1994). A defendant's conviction must be reversed based on the ineffectiveness of counsel if the defendant meets his burden of

showing that "counsel's performance was deficient" and "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. The two-part *Strickland* test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

¶ 29 *Strickland*'s first prong is the same whether a defendant challenges his guilty plea or presents other arguments regarding the ineffectiveness of counsel. *Hill*, 474 U.S. at 58-59. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

¶ 30 In challenges to guilty pleas based on the alleged ineffectiveness of counsel, *Strickland*'s "prejudice" prong focuses on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. Thus, to satisfy the "prejudice" requirement in such cases, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* Further, the defendant "must convince the court that a decision to reject the plea bargain would

14

have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

¶ 31 "Some objective evidence must corroborate the defendant's testimony that he would have made a different decision about the plea if he had been properly advised." *People v. Sifuentes*, 2017 COA 48M, ¶ 20, 410 P.3d 730, 736. The *Sifuentes* division described different types of such objective evidence — the strength of the prosecution's case, the plea deal's attractiveness, and the risks of going to trial. *Id.* at ¶¶ 21-22, 410 P.3d at 736.

### 2. Deficient Performance

¶ 32 As noted above, McMillian contends that his plea counsel's performance was deficient because counsel failed to thoroughly investigate McMillian's competency and mental health, consult an expert, raise competency as an issue, and investigate the charges before advising McMillian to accept the plea offer. In addition, McMillian alleges that plea counsel failed to obtain the records necessary to investigate McMillian's mental health and developmental history. Indeed, the record does not indicate that plea counsel arranged for an independent professional to evaluate McMillian for competency before he entered his guilty plea.

McMillian argues that the court would not have accepted the guilty plea if plea counsel had challenged his competency through the results of such an evaluation.

¶ 33 The postconviction court, however, found that the record showed that McMillian "brought the plea bargain to the prosecution because, although it was a long sentence, it was favorable when compared with the alternative sentence that could have resulted from conviction at trial." It said that McMillian failed to sufficiently establish that his counsel's performance was deficient, noting that counsel "sufficiently litigated [McMillian's] case by having his conditions assessed and addressing them in full" and concluding that counsel's "performance was well within the range of reasonable competence demanded of attorneys in criminal cases."

¶ 34 The record does not support the postconviction court's finding that plea counsel had McMillian's intellectual functioning assessed and fully addressed the issue. However, we agree with the postconviction court that McMillian's deficiency claim is vague, conclusory, and lacks supporting factual allegations. For example, McMillian fails to indicate what additional information an investigation into his competency would have revealed or the

specific information that plea counsel could have presented to the court to establish that McMillian was incompetent to enter into the plea agreement. In a case with analogous facts, a division of this court held that plea counsel was not deficient by not investigating whether the defendant's child died in utero, despite evidence showing the child was born alive, because "the mere possibility that additional investigation would have revealed useful information does not establish ineffective assistance." *People v. Pendleton*, 2015 COA 154, ¶ 34, 374 P.3d 509, 516. "Such conclusory allegations are insufficient to demonstrate that [the defendant] may be entitled to postconviction relief and that the record might contain specific facts that would substantiate his claim." *People v. Osorio*, 170 P.3d 796, 801 (Colo. App. 2007).

¶ 35 For these reasons, McMillian failed to meet his burden of establishing his claim under *Strickland*'s deficient performance prong.

### 3. Prejudice

¶ 36 McMillian contends that plea counsel's failure to investigate competency, raise competency, and investigate the case demonstrates "a reasonable probability that, but for counsel's

errors, [McMillian] would not have pleaded guilty and would have insisted on going to trial." (quoting *Hill*, 474 U.S. at 59). The record undercuts this argument, however.

¶ 37    McMillian argues that the second *Sifuentes* factor — the plea offer's attractiveness — provides objective evidence that he could have rationally chosen to proceed to trial instead of stipulating to a fifty-two-year sentence. He asserts that the result under the worst-case scenario at trial would have been no worse than the result under the plea agreement.

¶ 38    As McMillian acknowledges in his opening brief, the worst-case scenario that McMillian faced if convicted on all counts was a life sentence without parole on the first degree kidnapping charge and lengthy consecutive sentences on the first degree assault and the sexual assault counts. McMillian argues that his determinate fifty-two-year sentence is effectively the same sentence he would have received if a jury had convicted him on the original charges — a life sentence. For this reason, McMillian contends that the plea deal was not attractive and that his risk of going to trial was low. He asserts this is objective evidence that it would have

been rational for him to reject the guilty plea if his plea counsel had properly advised him. *See Sifuentes*, ¶¶ 20-21, 410 P.3d at 736.

¶ 39 For three reasons, the record does not support McMillian's assertion that there was a reasonable probability that, but for plea counsel's allegedly deficient performance, he would have insisted on going to trial. First, McMillian himself initiated the plea negotiations when he asked his counsel "to seek out an agreement" with the prosecution. Second, the prosecution's case was strong. At least two reliable witnesses could have testified at trial — the victim and the bystander who identified McMillian as the attacker. Third, contrary to McMillian's assertion, "the end result under the worst[-]case scenario at trial" was indeed worse than the sentence to which he stipulated. McMillian acknowledges that, if a jury convicted him on all seven counts, he would have been sentenced to life without parole, followed by lengthy consecutive sentences on the sexual assault and first degree assault counts. By pleading guilty, McMillian received a determinate fifty-two-year sentence with the possibility of parole.

¶ 40 Rejecting the plea agreement would not have been rational under the circumstances. Therefore, the postconviction court did

19

not err by denying McMillian's prejudice argument without a hearing.

¶ 41    (In addition, we note that, to support his argument under *Strickland*'s prejudice prong, McMillian's counsel attached a U.S. Census Bureau publication regarding life expectancy in the United States to the opening brief.  The publication does not appear in the record, however.  Similarly, in their answer brief, the People referenced a website that also does not appear in the record — the Colorado Department of Corrections Offender Search site.  McMillian also mentions this site in his opening brief.  We will not consider the publication or the website, however, because they were not presented to the postconviction court.  We remind counsel that "[w]e are limited to the record presented and may consider only arguments and assertions supported by the evidence in the record." *Fendley v. People*, 107 P.3d 1122, 1125 (Colo. App. 2004).)

¶ 42    For the above reasons, we reject McMillian's claim that his plea counsel was ineffective.

### III.    Disposition

¶ 43    The order is affirmed.

JUDGE J. JONES and JUDGE SULLIVAN concur.