The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
August 9, 2018

## 2018COA114

**No. 15CA2008, People v. McGlaughlin — Civil Procedure — Law
Student Practice; Constitutional Law — Sixth Amendment —
Right to Counsel**

As a matter of first impression, the division holds that when a
criminal defendant is represented by a student attorney under
C.R.C.P. 205.7, a supervising attorney must be physically present
in the courtroom during all critical stages of the criminal case.  If
the supervising attorney is not present during a critical stage, the
defendant is denied his Sixth Amendment right to counsel.  The
division further holds that all other violations of C.R.C.P. 205.7 are
properly analyzed under the test for ineffective assistance of counsel
announced in *Strickland v. Washington*, 466 U.S. 668 (1984).

The majority concludes that the record in this Crim. P. 35(c)
motion did not clearly establish that the supervising attorney was

present during defendant's plea hearing.  The case is therefore reversed and remanded to the postconviction court for an evidentiary hearing and further findings.

The dissent defers to the postconviction court's findings of fact that (1) the public defender was present in the courtroom during defendant's guilty plea and (2) the public defender adequately supervised the student attorney.  It therefore determines the record supported the postconviction court's conclusion that defendant did not show, under *Strickland*, 466 U.S. at 687, that he had been prejudiced by violations of C.R.C.P. 205.7.  As a result, the dissent would hold that the postconviction court did not err when it denied defendant's Crim. P. 35(c) motion without a hearing.

COLORADO COURT OF APPEALS                                    2018COA114

Court of Appeals No. 15CA2008
Boulder County District Court Nos. 12CR245, 12M689 & 12M1067
Honorable Ingrid S. Bakke, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jason Paul McGlaughlin,

Defendant-Appellant.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE BERGER
Loeb, C.J., concurs
Bernard, J., dissents

Announced August 9, 2018

Cynthia H. Coffman, Attorney General, Gabriel P. Olivares, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Krista A. Schelhaas, Alternate Defense Counsel, Littleton, Colorado, for Defendant-Appellant

¶ 1     Like many states, Colorado permits law students to represent defendants in criminal cases under limited circumstances and subject to specific requirements that must be met by both the law student and the supervising lawyer.  C.R.C.P. 205.7.[1]

¶ 2     After pleading guilty to third degree assault and violation of a protection order, defendant, Jason Paul McGlaughlin, moved to vacate his plea and the resulting convictions, claiming that he was deprived of his Sixth Amendment right to effective assistance of counsel when he was represented only by a law student, not a licensed lawyer, at his plea hearing.

---

[1]At the time of McLaughlin's plea, the requirements for law practice by a law student were contained in both statutes, sections 12-5-116.1 and -116.2, C.R.S. 2012, and rules promulgated by the supreme court, C.R.C.P. 226.5 (2012).  *See People v. Coria*, 937 P.2d 386, 389 (Colo. 1997) (generally discussing the statutes' requirements).  In 2014, the supreme court promulgated C.R.C.P. 205.7, which replaced C.R.C.P. 226.5, Rule Change 2014(09), Colorado Rules of Civil Procedure (Amended and Adopted by the Court En Banc, Sept. 1, 2014), https://perma.cc/2LPT-3UQJ, and the legislature later relocated the pertinent statutes to sections 13-93-202 and -203, C.R.S. 2017, Ch. 192, sec. 1, §§ 13-93-202, -203, 2017 Colo. Sess. Laws 701-03.  No substantive changes were made when the court promulgated C.R.C.P. 205.7.  Because the requirements of both the rule and the statutes are essentially identical, we address only the rule.

¶ 3    The postconviction court denied McGlaughlin's Crim. P. 35(c) motion without a hearing, concluding that the record disproved McLaughlin's claim.  We disagree with the postconviction court's analysis and disposition and reverse the court's order.

## I.    Relevant Facts and Procedural History

¶ 4    McGlaughlin was involved in a fight with his ex-girlfriend's new boyfriend.  The prosecution charged him with second degree assault (a felony) and a related traffic offense.

¶ 5    Based on McGlaughlin's alleged conduct, his ex-girlfriend obtained a temporary protection order that prohibited McGlaughlin from contacting her.  McGlaughlin allegedly violated the order twice, which resulted in the filing of two additional misdemeanor charges.

¶ 6    McGlaughlin resolved all these charges by pleading guilty to one count of third degree assault (a misdemeanor) and to one count of violating a protection order (also a misdemeanor).  At his plea hearing, McGlaughlin was represented by a law student extern

practicing under C.R.C.P. 205.7.[2]  The court accepted

McGlaughlin's plea and sentenced him to two years of probation.

¶ 7     McGlaughlin alleged the following material facts in his Crim.

P. 35(c) motion, which sought to vacate his plea and conviction:

- The deputy public defender who was assigned to supervise the law student was not present in the courtroom when he pleaded guilty.

- He was unaware, until after the plea hearing, that the student was not, in fact, a licensed lawyer.

- While he pleaded guilty only to misdemeanors, he was charged with a felony, and law students are prohibited from representing defendants in felony proceedings.

- He never consented, in writing or otherwise, to representation by a law student.

---

[2] The title of C.R.C.P. 205.7 is "Law Student Practice," and the rule refers to practice by "Law Student Externs."  But in *Coria*, 937 P.2d at 389, the supreme court referred to the law student there as a "certified law student intern."  We perceive no distinction between an intern and an extern, and we consider those terms to be synonymous.

- The law student did not make a record during the plea hearing that she was an extern, and the court was not aware that she was one.

¶ 8 The postconviction court denied his motion without a hearing, concluding that (1) the record established that the deputy public defender was, in fact, present at the plea hearing; (2) McGlaughlin was adequately represented by counsel at all critical stages of the proceedings; (3) the record established that McGlaughlin was not entitled to relief on the basis of his claim of ineffective assistance of counsel; and (4) McGlaughlin's plea was entered knowingly, intelligently, and voluntarily.

## II. The Postconviction Court Erred by Denying McGlaughlin's Claim Without a Hearing

¶ 9 McGlaughlin argues that his plea was constitutionally invalid under the Sixth Amendment because he was not represented by a licensed lawyer at a critical stage of his criminal case. He also asserts that the assistance that he received from the law student who represented him was ineffective because the deputy public defender did not adequately supervise her.

4

## A. Colorado's Law Student Practice Rule

¶ 10    As relevant to our analysis, C.R.C.P. 205.7 imposes the following conditions and limitations on the representation of criminal defendants by law students:

- They cannot represent a defendant who "has been charged with a felony." C.R.C.P. 205.7(2)(a)(i).

- The defendant must consent, in writing, to the law student's representation. C.R.C.P. 205.7(2)(a)(i)(B).

- The defendant's written consent "shall be made in the record of the case and shall be brought to the attention of the judge of the court." C.R.C.P. 205.7(2)(a)(ii).

- When representing the office of the state public defender and its clients, the law student must be "under the supervision of the public defender or one of his or her deputies." C.R.C.P. 205.7(2)(a)(i)(B).

- The supervising lawyer must sign and approve all pleadings, briefs, and other legal documents. C.R.C.P. 205.7(2)(a)(iii).[3]

    B.    The Effect of a Violation of C.R.C.P. 205.7

¶ 11    There is no serious disagreement that a number of these conditions were violated in this case. Indeed, the postconviction court so found. The question we must decide, then, is the effect, if any, of those violations on McGlaughlin's guilty pleas and resulting convictions.[4]

¶ 12    A criminal defendant has a Sixth Amendment right to the assistance of counsel at all critical stages of his criminal case. U.S. Const. amend. VI; *Wheat v. United States*, 486 U.S. 153, 158-59 (1988); *People v. Arguello*, 772 P.2d 87, 92 (Colo. 1989). "[T]he acceptance of a plea offer and the entry of a guilty plea is a critical

---

[3] We note that there is some question whether subsection (2)(a)(iii) applies to the law student practice governed by C.R.C.P. 205.7(2)(a)(i) or whether it is only applicable in situations that are not governed by C.R.C.P. 205.7(2)(a)(i). Given our disposition, it is unnecessary for us to decide this question.

[4] We have no jurisdiction to address, and therefore express no opinions on, the regulatory or disciplinary consequences, if any, of any of these violations. *See Colo. Supreme Court Grievance Comm. v. Dist. Court*, 850 P.2d 150, 152 (Colo. 1993).

stage, creating an entitlement to counsel." *Carmichael v. People*, 206 P.3d 800, 805 (Colo. 2009). The interpretation and application of the Sixth Amendment is a matter of federal, not Colorado, law. *Cmty. Hosp. v. Fail*, 969 P.2d 667, 672 (Colo. 1998).

¶ 13    The licensure of lawyers, however, is a matter of state law. *People v. Coria*, 937 P.2d 386, 389 (Colo. 1997). The Colorado Supreme Court has the "sole authority to license attorneys . . . and to prescribe the rules and circumstances under which a person may appear as counsel in Colorado courts." *Id.* Thus, conceivably, the supreme court could, as a matter of state law, authorize law students to engage in the plenary practice of law. We need not address any Sixth Amendment ramifications of doing so, because the supreme court has refused to exercise any such authority.

¶ 14    In *Coria*, the court rejected the argument that law students are the equivalent of licensed lawyers when they practice under C.R.C.P. 205.7. *Id.* There, the defendant argued that his Sixth Amendment rights were violated when the trial court refused him his counsel of choice — a law student extern. *Id.* The supreme court held that the defendant's Sixth Amendment rights were not violated because "the law student intern was neither a deputy

public defender nor a licensed Colorado practitioner. Defendants do not have a right under the Sixth Amendment to be represented by unlicensed persons. '[A]n advocate who is not a member of the bar may not represent clients . . . in court.'" *Id.* (quoting *Wheat,* 486 U.S. at 159). It follows that a law student is an "unlicensed person[]," not a licensed lawyer. *Id.*

### 1. The Supervising Lawyer's Presence

¶ 15    C.R.C.P. 205.7 does not explicitly require the presence of the supervising lawyer in the courtroom during critical stages of criminal cases, unlike the rules of virtually every other state that authorizes the limited practice of law by law students. *See, e.g.*, Ill. Sup. Ct. R. 711(c)(2)(iii) (stating that a law student may participate in criminal proceedings "as an assistant of the supervising member of the bar, who shall be present and responsible for the conduct of the proceedings"); Miss. Code Ann. § 73-3-207(e) (West 2017) ("Law students may appear and participate in trials and hearings in courts if the supervising attorney or clinical teacher is present and supervising the student."); Wash. Admission & Practice R. 9 (detailing the activities a law student may do without the presence

8

of the supervising lawyer and those where the supervising lawyer must be present).

¶ 16    The Sixth Amendment, however, requires that a defendant have a licensed lawyer at the critical stages of his criminal case, *Wheat*, 486 U.S. 158-59, and, as noted, the Colorado Supreme Court has held that law students are *not* licensed lawyers, *Coria*, 937 P.2d at 389.  Thus, the Sixth Amendment requires that a licensed lawyer be present in the courtroom when a law student represents a criminal defendant during a critical stage of his criminal case.

¶ 17    If the supervising lawyer is not in the courtroom during those critical stages, no licensed lawyer is present, and the defendant is denied his constitutional right to counsel guaranteed by the Sixth Amendment.  Such a complete deprivation of counsel is a structural error, requiring reversal without regard to any showing of prejudice. *United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984); *Hagos v. People*, 2012 CO 63, ¶ 10.

2.    Other Violations of C.R.C.P. 205.7

¶ 18    Having determined that it is a violation of C.R.C.P. 205.7 for the supervising lawyer not to be present during critical stages of a

criminal case, and that such a violation constitutes structural error, we now turn to the question of how to evaluate other possible violations of C.R.C.P. 205.7.  No Colorado appellate case has addressed this question; however, a number of other states (applying similar statutes or rules) have.

¶ 19 One line of cases holds that even if a licensed lawyer appears at the proceeding, the substantial involvement by a law student (such as the examination of witnesses), without the client's consent to representation by the law student, is a structural error.  *See People v. Miller*, 152 Cal. Rptr. 707, 709 (Cal. App. Dep't Super. Ct. 1979); *In Interest of C.B.*, 546 So. 2d 447, 448 (Fla. Dist. Ct. App. 1989); *see also In re Denzel W.*, 930 N.E.2d 974, 986 (Ill. 2010) (Freeman, J., dissenting).[5]

¶ 20 This conclusion is premised on the theory that allowing a non-lawyer to participate in the proceeding without the defendant's actual consent constitutes a partial waiver of the right to counsel.

[5] By citing these cases, which addressed statutes or rules that required the client's consent to be in writing, we do not address whether the Sixth Amendment, as opposed to rules governing student lawyer practice, requires *written* consent.  *See People v. Miller*, 152 Cal. Rptr. 707, 709 (Cal. App. Dep't Super. Ct. 1979); *In Interest of C.B.*, 546 So. 2d 447, 448 (Fla. Dist. Ct. App. 1989).

*Miller,* 152 Cal. Rptr. at 709.  Such a waiver must be knowingly, voluntarily, and intentionally made.  *Id.*

¶ 21    Another line of cases holds that *all* violations of the rules governing student practice — other than the threshold question of the supervising lawyer's presence — are evaluated under the *Strickland v. Washington,* 466 U.S. 668 (1984), test governing the ineffective assistance of counsel.  *Washington v. Moore,* 421 F.3d 660, 662 (8th Cir. 2005); *Denzel W.,* 930 N.E.2d at 983-84; *State v. Loding,* 895 N.W.2d 669, 676-82 (Neb. 2017).

¶ 22    We agree with those decisions that apply *Strickland* to violations other than the absence of the supervising lawyer.  They appropriately distinguish the situation in which the defendant is not represented by counsel at all — when only a non-licensed law student is representing the defendant during a critical stage of his criminal case — from the very different circumstance in which the defendant *is* represented by a licensed lawyer but the representation allegedly falls below the level of competence demanded by the Constitution, due in part to the participation of the law student.

¶ 23     While the presence or absence of a supervising lawyer in the courtroom is a binary choice, other possible violations of C.R.C.P. 205.7, such as the quality and quantity of supervision, or whether consent was given (orally, in writing, or both), are more nuanced. Once it has been determined that the defendant was represented by a licensed lawyer, it is entirely appropriate to determine the adequacy of that representation by the test for ineffective assistance of counsel announced in *Strickland*, 466 U.S. 668. *See Denzel W.*, 930 N.E.2d at 983.

### C.     Analysis of McGlaughlin's Crim. P. 35(c) Motion

¶ 24     The supreme court has repeatedly held that a postconviction court must hold an evidentiary hearing on a Crim. P. 35(c) motion "*unless* the motion, the files, and the record *clearly establish* that the allegations in the motion lack merit and do not entitle the defendant to relief." *Kazadi v. People*, 2012 CO 73, ¶ 17 (emphasis added) (citing *White v. Denver Dist. Court*, 766 P.2d 632, 634 (Colo. 1988)). "Summary denial of a postconviction relief motion is also appropriate if the claims raise only an issue of law, or if the allegations, even if true, do not provide a basis for relief." *People v. Venzor*, 121 P.3d 260, 262 (Colo. App. 2005). "Likewise, if the

claims are bare and conclusory in nature, and lack supporting factual allegations, the motion may also be denied without a hearing." *Id.*

¶ 25 We review de novo a postconviction court's denial of a Crim. P. 35(c) motion without a hearing. *People v. Gardner*, 250 P.3d 1262, 1266 (Colo. App. 2010); *see also People v. Higgins*, 2017 COA 57, ¶ 11; *People v. Smith*, 2017 COA 12, ¶ 12; *People v. Phipps*, 2016 COA 190M, ¶ 20.

¶ 26 At the same time, we recognize the tension between de novo review and the supreme court rule authorizing postconviction courts to make some findings of fact without a hearing in deciding Crim. P. 35(c) motions. *See* Crim. P. 35(c)(3)(V). But, contrary to the dissent's contention, not every disputed question of fact can be decided without a hearing. Were that the case, the supreme court's default rule that a hearing is required unless an exception applies would be swallowed by the exception itself.

¶ 27 To give effect to the supreme court's default rule, deference to a postconviction court's factual finding by application of the clearly erroneous standard is warranted *only* when the factfinding was

made using accepted procedures *and* when the record clearly establishes the fact.  Neither requirement was met here.

¶ 28    Ordinarily, of course, in order to properly find disputed facts, a court holds a hearing and considers *all* (not just some) of the relevant evidence, documentary and testimonial, before making a factual finding.  *See, e.g., J.A. Walker Co. v. Cambria Corp.,* 159 P.3d 126, 130 (Colo. 2007) (applying this rule to a fraudulent inducement challenge to an arbitration agreement); *Archangel Diamond Corp. v. Lukoil,* 123 P.3d 1187, 1190 (Colo. 2005), *as modified on denial of reh'g* (Dec. 19, 2005) (applying this rule in the C.R.C.P. 12(b)(2) context); *People v. Wunder,* 2016 COA 46, ¶ 34 ("[A] trial court may not, consistent with procedural due process, enter judgments for civil penalties and restitution on disputed facts without holding an evidentiary hearing.").

¶ 29    Here, the postconviction court relied on some evidence to find that the public defender was present in the courtroom during McGlaughlin's plea hearing.  But, the court did not consider all of the evidence, some of which would support a finding that the public defender was not present.  And, indisputably, it did not consider the evidence perhaps most probative of the question — testimony

14

by the public defender and even the presiding judge. For this reason alone, the court's factual finding is not entitled to deference under the clearly erroneous standard of review.

¶ 30 Moreover, the second requirement for deference is also lacking — the fact is not "clearly established" by the existing record.

¶ 31 To effectuate the supreme court's relevant holdings, postconviction courts may only dispense with a hearing when the record *clearly establishes* that the defendant is not entitled to relief. *Kazadi*, ¶ 17. That is, when a disputed issue of material fact is central to the determination of whether the defendant has alleged a meritorious postconviction claim, that fact may be determined by the court only when the fact itself is "clearly established." *See* IV *ABA Standards for Criminal Justice* § 22-4.6(a) (2d ed. 1980) ("A plenary hearing to receive evidence, by testimony or otherwise, is required whenever there are material questions of fact which must be resolved in order to determine the proper disposition of the application for relief."). It follows that a postconviction court may make a dispositive factual finding without a hearing only when the fact in question is "clearly established."

¶ 32    For the reasons we articulate below, the historical finding of fact that the public defender was present at the plea hearing is not clearly established by the existing record.  As a result, contrary to the dissent's suggestion, we may not defer to that factual finding.  We must instead remand for the postconviction court to hold an evidentiary hearing on that question and then make findings of fact after considering all of the relevant evidence.

1.    The Public Defender's Presence

¶ 33    As noted, McGlaughlin specifically alleged in his Crim. P. 35(c) motion that the deputy public defender was not present in the courtroom when he pleaded guilty.

¶ 34    In finding that the deputy public defender was present at the plea hearing, the postconviction court primarily relied on the plea court's minutes.[6]  Based on our review of the court's minutes (reproduced below), we are convinced that those minutes alone

---

[6] In that respect, we note that the judge who decided the postconviction motion was not the same judge who presided over the plea hearing.  Thus, the postconviction court could have had no personal knowledge that the public defender was present at the plea hearing.

cannot properly be the basis of the court's factual finding made without a hearing.

¶ 35    First, the minutes relied on by the postconviction court reflect two separate proceedings: the plea hearing, which took place on November 19, 2012, and the sentencing hearing, which took place on January 10, 2013.  Even if the deputy public defender was present at the sentencing hearing (and he apparently was based on the transcript of that hearing), such a determination is not dispositive of the question whether the deputy public defender also was present at the critical plea hearing.

¶ 36    We cannot determine from the face of the minutes whether the deputy public defender was present at the plea hearing, the

sentencing hearing, or both. Nor can we determine *when* the apparently different handwritten notations were made by the presiding judicial officer. Importantly, we cannot tell if the name of the deputy public defender (A. Egizi) was inserted at the sentencing hearing or at the plea hearing.

¶ 37 Second, there is other evidence in the record that supports a finding that the public defender was *not* present. The transcript of the plea hearing, for example, does not reflect the appearance of the deputy public defender in any respect. He is not listed on the portion of the hearing transcript that traditionally contains the names of the lawyers who were present and participated in the hearing. So far as can be gleaned from the transcript, the deputy public defender never entered his appearance or introduced the law student to the court at the hearing as required by C.R.C.P. 205.7(2)(b)(i)(D). *See Coria,* 937 P.2d at 390.

¶ 38 The plea court also never addressed the deputy public defender at the hearing (indeed, from the context of the presiding judge's statements, we cannot tell whether the judge was aware that the person representing McGlaughlin was not a licensed lawyer, but instead a law student).

¶ 39    Third, the law student alone signed the "Attorney Certificate to the Court" in McGlaughlin's plea agreement and Crim. P. 11 advisement. Although the signature line is labeled as "Attorney's Signature," only the law student (who is not a lawyer) signed the document. The deputy public defender's name does not appear anywhere on the plea agreement.

¶ 40    While the court minutes constitute relevant evidence on the question of whether the deputy public defender was present at the plea hearing, they are by no means conclusive of that question, and they do not rise to the level of certainty required to dispense with an evidentiary hearing.[7] In other words, the court minutes do not, together with any other information in the record, "clearly establish" that the deputy public defender was at the plea hearing. It follows

---

[7] The rule that the interpretation of an unambiguous writing is a question of law, *see O'Brien v. Vill. Land Co.*, 794 P.2d 246, 249 (Colo. 1990), provides no support for the postconviction court's finding. In this case, no single writing is dispositive of the question of whether the public defender was present at the plea hearing. Indeed, to make a reasoned determination of that question, a fact finder must consider multiple writings (the court minutes, transcripts of the plea hearing, and the documents executed in connection with the plea hearing) as well as testimony of percipient witnesses: the defendant, the public defender, the prosecutor, and even the judge that presided over the hearing.

that the postconviction court erred in deciding this quintessentially factual question without a hearing.

### 2. Effectiveness of McGlaughlin's Counsel

¶ 41    Just as we cannot on this record sustain the postconviction court's finding that the deputy public defender was present during McGlaughlin's plea hearing, we also cannot sustain the court's findings and conclusions without a hearing that the law student was adequately supervised — which was central to its conclusion that McGlaughlin received the effective assistance of counsel.

¶ 42    The postconviction court concluded — based in part on its erroneous finding that the deputy public defender was present at the plea hearing — that the law student was supervised in her representation of McGlaughlin.  It also found that the law student was "involved in a supervised capacity with two licensed attorneys well before [McGlaughlin] entered a guilty plea."  While that finding may be supported by the record, we conclude that absent a hearing, it is insufficient to support a further finding that the deputy public defender adequately supervised (or supervised at all) the law student in connection with the plea hearing.

¶ 43    Irrespective of whether the law student previously represented McGlaughlin or appeared on his behalf at other hearings, applying the *Kazadi* standard, the record does not "clearly establish" the quantity or quality of supervision respecting the legal advice provided in connection with the plea hearing.  Therefore, the postconviction court erred in deciding this question without the benefit of a hearing.

### 3.    An Evidentiary Hearing is Required

¶ 44    We therefore remand the case to the postconviction court for an evidentiary hearing.  Based on the evidence presented at that hearing, the postconviction court must first determine if the deputy public defender was present during the plea hearing.  If it finds that the deputy public defender was *not* present at McGlaughlin's plea hearing, then McGlaughlin was deprived of his constitutional right to counsel — a structural error — and the postconviction court must vacate McGlaughlin's plea and judgment of conviction, and reinstate the original charges.  *See Denzel W.*, 930 N.E.2d at 982; *see also Hagos*, ¶ 10; *Carmichael*, 206 P.3d at 805.

¶ 45    If, on the other hand, the postconviction court finds that the deputy public defender *was* present during the plea hearing, it

must then reanalyze McGlaughlin's remaining claims — including his claim that the law student was not adequately supervised — under *Strickland.* *See Denzel W.*, 930 N.E.2d at 983; *see also Moore*, 421 F.3d at 662; *Loding*, 895 N.W.2d at 680-81.

¶ 46    Finally, if, based on the evidence presented, the court finds that the deputy public defender was present during McGlaughlin's plea hearing and that McGlaughlin did not meet his burden under *Strickland* to show that he was deprived of the effective assistance of counsel, McGlaughlin is not entitled to relief and the court should again deny his Crim. P. 35(c) motion.

### III.    Conclusion

¶ 47    The order denying McGlaughlin's Crim. P. 35(c) motion is reversed, and the case is remanded for the proceedings directed above.

CHIEF JUDGE LOEB concurs.

JUDGE BERNARD dissents.

JUDGE BERNARD, dissenting.

¶ 48  I disagree with the majority's decision to reverse the trial court's order.  I therefore respectfully dissent.

## I. Introduction

¶ 49  Generally, the Sixth Amendment requires a licensed attorney to represent a client in court.  *Wheat v. United States*, 486 U.S. 153, 159 (1988).  But C.R.C.P. 205.7 allows certified law students to practice in certain circumstances.  *See People v. Coria*, 937 P.2d 386, 389 (Colo. 1997).  As is relevant to my analysis, Rule 205.7 establishes the following conditions for law student externs who work under the supervision of public defenders.  They cannot represent clients facing felony charges.  C.R.C.P. 205.7(2)(a)(i).  The client must consent to the student attorney's representation.  C.R.C.P. 205.7(2)(a)(i)(B).  The consent must be made a part of the record in the case and brought to the court's attention.  C.R.C.P. 205.7(2)(a)(ii).  And the student attorney must be "under the supervision of the public defender or one of his or her deputies."  C.R.C.P. 205.7(2)(a)(i)(B).

## II. Defendant's Contentions

¶ 50    Defendant filed his Crim. P. 35(c) motion in May 2014. As is pertinent to my analysis, it raised three contentions.

¶ 51    First, he claimed that he was denied his Sixth Amendment right to counsel because he had been represented by a student attorney, not by a licensed attorney — a public defender in this case — when he pled guilty. Indeed, he added, the public defender was not even present when he entered his guilty plea.

¶ 52    Second, the assistance that he received from the student attorney was ineffective because the public defender had not adequately supervised her. He supported this claim by pointing to violations of Rule 205.7:

- the student attorney represented him on a felony charge, even though Rule 205.7(2)(a)(i) prevented her from doing so;

- he did not consent to the student attorney's representation, even though Rule 205.7(2)(a)(i)(B) required such consent; and

- the student attorney did not make a record during the plea hearing that she was a student attorney, so the court was not aware that she was one.

¶ 53 Third, he claimed that the student attorney was ineffective because she did not adequately advise him that his guilty plea to third degree assault would include a finding that it was a crime of domestic violence or that the domestic violence finding could have consequences in future proceedings. He added that the public defender had not discussed the particulars of the plea with him or signed the plea agreement.

¶ 54 I disagree with all three contentions. As the reader can see, they contain several factual assertions, including (1) the public defender was not present when defendant entered his guilty plea; and (2) the public defender did not adequately supervise the student attorney. The postconviction court made specific findings of fact concerning these two contentions. Defendant submits that we should disregard them. I cannot do so because the record supports them.

### III. The Postconviction Court's Factual Findings

¶ 55    John Adams said, while arguing in defense of the British soldiers during the Boston Massacre trial in 1770, that "[f]acts are stubborn things; and whatever may be our wishes, or inclinations, or the dictates of our passions, they cannot alter the state of facts and evidence."  David McCullough, *John Adams* 68 (2001).  The stubborn things in this case are the postconviction court's factual findings.

¶ 56    One of these stubborn things concerned a handwritten notation of a public defender's name on something called the trial court's "minutes."  These minutes contained both the student attorney's name and the public defender's name.  The postconviction court found that the notation in the minutes meant that the public defender and the student attorney had both been present, representing defendant, during the plea hearing.

¶ 57    But defendant claims that "it appears" that the public defender's name "was added at a later time," after the student attorney's name.  This suggests, defendant continues, that the trial court wrote the public defender's name on the minutes during the sentencing hearing, not during the plea hearing.  Defendant

26

supports this claim by pointing out that the public defender's name was "written at an angle" after the student attorney's name.

¶ 58    The other stubborn thing involved the postconviction court's finding that the student attorney was adequately supervised. Defendant claims that the record contradicts this finding.

¶ 59    This is all very interesting. But defendant's contentions about the postconviction court's factual findings arise too late in the process because they are directed to the wrong audience. We review a postconviction court's decision to deny a Crim. P. 35(c) motion de novo, but *we defer to the court's factual findings if the record supports them. Dunlap v. People,* 173 P.3d 1054, 1063 (Colo. 2007). In other words, we are an appellate court, and we cannot find facts. *People v. A.W.,* 982 P.2d 842, 845 (Colo. 1999). This proposition is so fundamental that our supreme court has described it as "axiomatic." *Gebhardt v. Gebhardt,* 198 Colo. 28, 30, 595 P.2d 1048, 1050 (1979).

¶ 60    Rather, it was the postconviction court's job in this case to find the facts. If defendant's contention had any force, it was up to the postconviction court to recognize it. "The empirical component of . . . fact finding[] is the basic responsibility of the trial court,

involving as it does a weighing of evidence and an assessment of credibility." *People v. Pearson*, 725 P.2d 782, 786 (Colo. 1986) (Quinn, C.J., dissenting). "[A]ppellate courts are not to decide factual questions de novo, reversing any findings they would have made differently." *Maine v. Taylor*, 477 U.S. 131, 145 (1986).

¶ 61 We will "set aside a trial court's factual findings only when they are so clearly erroneous as to find no support in the record." *People v. Beauvais*, 2017 CO 34, ¶ 22. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). "This is so even when the [trial] court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts." *Id.* Indeed, "[i]f the [trial] court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it." *Id.* at 573-74.

¶ 62 According to the opposing views of defendant and the prosecution, there are two permissible ways to view the evidence in this case. On the one hand, the postconviction court could have found, as defendant suggests, that the notation of the public

28

defender's name on the minutes occurred after the plea hearing and that the student attorney had not been adequately supervised. On the other hand, it could have found, as it ultimately did, that the notation meant that the public defender was present during the plea hearing and that the student attorney had been adequately supervised.

¶ 63    Does the record support the postconviction court's factual findings that the public defender attended the plea hearing and that he adequately supervised the student attorney? The answer to this question is "yes," particularly because the court made other, complementary findings: (1) "public defenders represented . . . [d]efendant in his three cases after he dismissed private counsel"; (2) public defenders had appeared on defendant's behalf "on at least five separate occasions"; (3) the student attorney had been "involved in . . . [d]efendant's representation well before he entered his plea"; (4) the presentence report "identified . . . [d]efendant's counsel" as both the public defender and the student attorney; and (5) the public defender had been "significantly involved in and primarily responsible for the plea negotiations that resulted in" defendant's guilty plea.

¶ 64　The postconviction court also found that the student attorney had been supervised during the plea hearing.　More specifically, the court found that

> [b]ased upon [the student attorney's] ongoing involvement in the county court cases and prior appearance with . . . [d]efendant, the [c]ourt does not find . . . [d]efendant's claim that he only met [the student attorney] on the day of his sentencing to be credible.　Rather, the [c]ourt finds that claim to be directly contradicted by the court files.　[The student attorney] was involved in a supervised capacity with two licensed attorneys well before . . . [d]efendant entered a guilty plea.　Court minutes indicate that she continued to be supervised at the disposition hearing by [the public defender], even though he did not speak on the record.　Based on the foregoing, the [c]ourt concludes that . . . [d]efendant was adequately represented by counsel at all critical stages of the proceedings and that . . . [d]efendant's claim does not entitle him to post-conviction relief.

¶ 65　Based on the interlocking nature of all of these findings, I conclude that they were "plausible in light of the record viewed in its entirety."　*Anderson*, 470 U.S. at 573-74.　I am therefore duty bound to reject defendant's contention.　*See id.*

¶ 66　"The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make

30

determinations of credibility." *Id.* at 574. "The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise." *Id.* When an appellate court duplicates a trial court's factfinding, the result "would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources." *Id.* at 575.

¶ 67 Defendant implicitly asks us to ignore the postconviction court's expertise. *See id.* at 574. This expertise includes familiarity with the records, including the minutes, that trial courts generate in the postconviction court's judicial district. I cannot ignore the postconviction court's expertise because doing so (1) would not further the efficacy of our review; (2) would not advance the factfinding ball one inch; and (3) would exact "a huge cost" by diverting our resources from deciding issues of law. *Id.* at 575.

¶ 68 The postconviction court evaluated the entire record, including the minutes, and the court placed the minutes in the context of other facts. Another fact finder might have found the facts to favor defendant, but that is not a proper contention to raise in an appellate court. *See Taylor*, 477 U.S. at 145. The court found what it found, and the record supports what it found. So, as far as the

postconviction court's factual findings are concerned, our job was over before it started.  To paraphrase John Adams's eloquent statement, whatever defendant's wishes, or inclinations, or the dictates of his passions may be, they cannot now alter the postconviction court's stubborn factual findings.

¶ 69    It is beyond dispute that we review a postconviction court's decision to deny a Crim. P. 35(c) motion without a hearing de novo. *See, e.g.*, *People v. Smith*, 2017 COA 12, ¶ 12.  This means that we review de novo the postconviction court's decision to deny defendant's Crim. P. 35(c) motion because the record clearly established that defendant was not entitled to relief.  *People v. Venzor*, 121 P.3d 260, 262 (Colo. App. 2005).

¶ 70    What does the phrase "clearly established" mean in the context of a Crim. P. 35(c) proceeding?  Neither the supreme court nor the court of appeals has defined this term.  And it does not appear in Crim. P. 35(c).

¶ 71    Instead, Crim. P. 35(c)(3)(IV) states that, "[i]f the motion and the files and record of the case *show to the satisfaction of the court* that the defendant is not entitled to relief, the court shall enter written findings of fact and conclusions of law in denying the

motion." (Emphasis added.) It is obvious in this case that the motion, the file, and the record showed, to the postconviction court's satisfaction, that defendant was not entitled to relief.

¶ 72 And the phrase "clearly established" is likewise absent from Crim. P. 35(c)'s instructions to a postconviction court about what to do if its review of the motion, the file, and the record does not satisfy it that the defendant is not entitled to relief. In such circumstances, the postconviction court should serve the prosecution with the defendant's motion, appoint the public defender, and consider the public defender's response. Crim. P. 35(c)(3)(V). But, even then, "the court shall grant a prompt hearing on the motion unless, based on the pleadings, the court finds that it is *appropriate* to enter a ruling containing written findings of fact and conclusions of law." *Id.* (emphasis added).

¶ 73 It is my view that "clearly established" refers to the quality of the proof in the record rather than to the simple existence of a disagreement about what the proof means. Certainly, some disagreements raise serious questions about the quality of the proof. But, for the reasons that I have explained above, the disagreement in this case does not raise such serious questions.

¶ 74　Defendant's Crim. P. 35(c) motion was not filed during a pretrial stage of the proceedings when he was still presumed to be innocent.  And we are not considering the equivalent of an outcome-determinative civil motion that a litigant has filed before the merits of the case have been decided, such as those covered by C.R.C.P. 12(b)(2) (lack of jurisdiction), C.R.C.P. 12(b)(5) (failure to state a claim), or C.R.C.P. 56 (summary judgment).  Rather, this Crim. P. 35(c) proceeding occurred after the defendant had pled guilty.  Indeed, as our supreme court pointed out, "[i]n a Crim. P. 35(c) proceeding, there is a presumption of validity attaching to a judgment of conviction." *People v. Naranjo*, 840 P.2d 319, 325 (Colo. 1992).

¶ 75　The focus of defendant's contention in this case is on whether the record *clearly established* that he was not entitled to relief.  I think that, when evaluating whether the record did so, we must, in the course of our de novo review, defer to the postconviction court's factual findings.  If not, what are those factual findings for?  Defendant does not cite any case, and I have not found one, which holds that, as part of our de novo review, we should decline to defer to the postconviction court's factual findings about the record.

¶ 76    And what happens if we do not defer to those findings? (Remember that deferring to the factual findings does not mean affirming them if the record does not support them.)  I think that puts us in the unenviable position of acting as super fact finders, substituting our view of the facts for the postconviction court's view. As I have explained above, that is not a productive place for an appellate court.

## IV.    Application of the Sixth Amendment

¶ 77    Because I would defer to the postconviction court's findings, I turn to answering this question: What happens when one or more of the conditions in Rule 205.7, which governs the practice of law student externs, has not been met?  I think that this question leads me to sequential analyses, both of which involve the Sixth Amendment.

¶ 78    First, I must decide whether defendant's Sixth Amendment right to counsel was denied.  I conclude that it was not because the postconviction court found that the public defender was present when defendant pled guilty.

¶ 79    Second, I must figure out whether defendant was denied his right to effective assistance of counsel under the test established by

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  I conclude that he was not, so I agree with the postconviction court's determination that defendant did not "meet his burden to satisfy the *Strickland* standard."

### A. The Law of Other Jurisdictions

¶ 80    I begin my analysis by recognizing that, although the slate is clean in Colorado, other states have analyzed similar contentions about law students who represent defendants under local rules or statutes.  When I look at these cases, I find two relevant themes.

¶ 81    One theme is that, as long as a licensed attorney is present, the participation of a law student in the defendant's case who has not complied with the applicable rules does not deny the defendant the Sixth Amendment right to counsel.  *In re Denzel W.*, 930 N.E.2d 974, 982 (Ill. 2010) ("The presence of the licensed attorney, who certainly is counsel for constitutional purposes, is not somehow 'cancelled out' by the law student's participation, even if the law student has not complied with" the pertinent rules governing the student's practice.); *accord State v. Terrazas*, 347 P.3d 1151, 1152 (Ariz. Ct. App. 2015) (citing *In re Denzel W.*, 930 N.E.2d at 982); *People v. Perez*, 594 P.2d 1, 8 (Cal. 1979) ("Because defendant was

at all times represented by both an actively participating supervising attorney and a certified law student, he did have representation of counsel."); *Collins v. State*, 14 N.E.3d 80, 85 (Ind. Ct. App. 2014); *State v. Loding*, 895 N.W.2d 669, 679-80 (Neb. 2017) (holding there was no violation of the defendant's right to counsel when a licensed attorney was present at all times during the defendant's trial and during all interactions between the defendant and the student attorney).

¶ 82 The corollary to this first theme is that a defendant's right to counsel is violated if the defendant is represented by an unsupervised and unprepared law student. *Adams v. State*, 693 N.E.2d 107, 109 (Ind. Ct. App. 1998) ("In view of the lack of any meaningful supervision by an attorney . . . over [the law student's] representation, and coupled with [the student's] total lack of familiarity with the case, we conclude that [the defendant] was effectively unrepresented . . . .") (citation omitted); *Benbow v. State*, 614 So. 2d 398, 403-04 (Miss. 1993) (Because "the sponsoring attorney [was not] present with his intern in the courtroom" when the defendant entered a guilty plea, the defendant was "not represented by counsel . . . ."); *City of Seattle v. Ratliff*, 667 P.2d

630, 635 (Wash. 1983) ("We hold that [the defendant] was denied his right to counsel because the trial court prevented [the law student] from attaining the status of 'counsel' by apparently preventing him from contacting his supervis[ing]" attorney.); *see also United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984) (The United States Supreme Court "has uniformly found constitutional error without any showing of prejudice [only] when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding.").

¶ 83     (I note that at least three cases from Florida's Fourth District Court of Appeal have held that a violation of the law student practice rules was, under the facts of these cases, a sufficient basis to reverse a conviction. *D.K. v. State*, 881 So. 2d 50, 51-52 (Fla. Dist. Ct. App. 2004); *L.R. v. State*, 698 So. 2d 915, 916 (Fla. Dist. Ct. App. 1997); *In Interest of J.H.*, 580 So. 2d 162, 163 (Fla. Dist. Ct. App. 1991). *People v. Miller*, 152 Cal. Rptr. 707, 709 (Cal. App. Dep't Super. Ct. 1979), and the dissent in *In re Denzel W.*, 930 N.E.2d at 986 (Freeman, J., dissenting), reach similar results. I am not persuaded by these cases because they are contrary to the majority trend, to which I refer above.)

¶ 84    The second theme is that "a supervising attorney does not

satisfy his or her obligation . . . merely by being physically present."

*In re Denzel W.*, 930 N.E.2d at 983.  Courts must also apply the

standard *Strickland* two-step analysis in such circumstances.  *Id.*;

*see also Washington v. Moore*, 421 F.3d 660, 662-63 (8th Cir. 2005);

*United States v. Rimmell*, 21 F.3d 281, 286 (8th Cir. 1994); *Duval v.*

*State*, 744 So. 2d 523, 525-26 (Fla. Dist. Ct. App. 1999); *Loding*,

895 N.W.2d at 680-81.

¶ 85    This second theme means that the defendant must show that

(1) the representation was deficient because it fell below the level of

reasonably competent assistance; and (2) the deficient

representation was prejudicial because there was a reasonable

probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different.  *People v. Lopez*, 2015

COA 45, ¶ 58 (citing *Strickland*, 466 U.S. at 687).  The defendant

must establish both of these prongs to obtain relief.  *Davis v.*

*People*, 871 P.2d 769, 779 (Colo. 1994).

B.    Application of the Law

¶ 86    I initially conclude that defendant was not denied his Sixth

Amendment right to counsel.  Not only did the student attorney

represent him at the time of his plea, but the postconviction court found that the public defender was present during the plea and that the public defender adequately supervised the student attorney. *See In re Denzel W.*, 930 N.E.2d at 982; *accord Terrazas*, 347 P.3d at 1152; *Perez*, 594 P.2d at 8; *Collins*, 14 N.E.3d at 85; *Loding*, 895 N.W.2d at 679-80. As I recognized above, these were factual findings to which I must defer. *See People v. Gardner*, 250 P.3d 1262, 1266 (Colo. App. 2010).

¶ 87 Turning to defendant's ineffective assistance of counsel claim, I initially disagree with the prosecution's assertion that he did not raise it in the postconviction court. True, his pro se assertion was inartful: he was "not adequately represented by the public defender" because the student attorney was "not . . . an attorney at all." But he also alleged that (1) he was "present[ing] questions as to whether . . . [the student attorney and two public defenders who represented him] fail[ed] to advise on complete charges" and as to whether they had engaged in "collective, fraudulent misrepresentation"; (2) "the final defense counsel [meaning the student attorney], who misrepresented [her] credentials through[out] negotiations, unduly influenced the defendant by discouraging the trial procedures based

on fear of an affirmative defense by way of self defense . . . ."; and (3) "the so-claimed public defender [the student attorney] did not hold a prescient apprehension during her representation of the defendant."

¶ 88 These various allegations may not be a model of pleading clarity. But I think that they sufficiently raised an ineffective assistance of counsel claim. *See Rael v. People*, 2017 CO 67, ¶ 17 (parties do not need to employ "talismanic language" to preserve a contention). So, like the postconviction court, I will proceed to address the claim's merits.

¶ 89 Even if I assume that the student attorney's representation fell below the level of reasonably competent assistance because she, or the public defender, violated Rule 205.7, I nonetheless conclude that defendant has not satisfied the prejudice prong of the *Strickland* test. *See Davis*, 871 P.2d at 779. This is so because he has not shown that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Lopez*, ¶ 58.

¶ 90 Defendant contends that he suffered prejudice because he would not have pled guilty if he had known that the plea included a

domestic violence finding. He adds that this finding subjected him to greater social stigma. But the record indicates that he was aware that the plea would include such a finding. For example, the prosecution's motion to add the third degree assault count clearly stated that it involved a domestic violence finding. And the written plea agreements for the third degree assault charge and the violation of a protection order charge, which defendant signed, stated that he was pleading guilty to a domestic violence offense.

¶ 91 Aside from pointing to the putative violations of Rule 205.7, defendant did not explain how those violations prejudiced him. For one example, although he alleged that the public defender did not discuss the plea disposition with him, he did not allege that the student attorney had misadvised him about anything besides the domestic violence finding.

¶ 92 Indeed, courts in other jurisdictions have held that such violations do not, without more, constitute prejudice for purposes of an ineffective assistance of counsel inquiry. *See Washington*, 421 F.3d at 662-63; *Duval*, 744 So. 2d at 525-26; *People v. Smith*, 893 N.E.2d 971, 974 (Ill. Ct. App. 2008) (concluding that the defendant's lack of consent to or knowledge of representation by law

student during hearing on motion to suppress did not constitute ineffective assistance of counsel).

¶ 93    My conclusion does not mean that Rule 205.7's requirements are "mere suggestions." *In re Denzel W.*, 930 N.E.2d at 980 (quoting *People v. Houston*, 874 N.E.2d 23, 34 (Ill. 2007)).  As the Nebraska Supreme Court pointed out in *Loding*, "there is a disciplinary process established to adjudicate rule violations."  895 N.W.2d at 681.  And, if defendant had linked the rule violations with demonstrable prejudice, he could have shown that his counsel had been ineffective.  But the simple violation of Rule 205.7 "is not the matter before us in this appeal."  *Id.*

¶ 94    I would therefore affirm the postconviction court's order denying defendant's request for a hearing because his Crim. P. 35(c) motion did not state adequate factual or legal grounds for relief. Crim. P. 35(c)(3)(IV).